[No. B218802. Second Dist., Div. Seven. Dec. 13, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
ORLANDO VASQUEZ, Defendant and Appellant.

**COUNSEL**

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PERLUSS, P. J.**—As part of the resolution of a criminal case charging him with two felony counts of failure to control a mischievous animal that caused serious bodily injury (Pen. Code, § 399, subd. (b)),[1] Orlando Vasquez agreed to pay $168,633.20 in restitution to Heiddy G., a young girl who had been severely mauled by his pit bull. Vasquez subsequently moved to have the court declare his restitution obligation satisfied, contending a $300,000 payment to settle a civil suit against Vasquez and his landlord, funded by the landlord's insurer through a homeowners policy that also insured Vasquez, is properly deemed restitution made directly from Vasquez within the meaning of section 1202.4 and constituted a full offset to the restitution award. The trial court denied the motion, observing its restitution order had expressly stated Heiddy was still receiving medical treatment and provided any additional losses she sustained could be recovered in a civil action. We affirm.

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Pit Bull Attack and Vasquez's Plea Agreement*

On June 9, 2006 Vasquez's pit bull escaped from his residence on North Hagar Street in the City of San Fernando. (The property was apparently owned by Antonio Mora.) The animal entered the San Fernando Middle School grounds where it cornered and savagely attacked Heiddy, a student in the seventh grade, while she was in one of the school's bathrooms. Heiddy suffered extensive injuries, which required multiple surgeries.

On June 12, 2006 Vasquez was charged in a felony complaint with two counts of violating section 399, subdivision (b), failing to control a mischievous animal that causes serious bodily injury:[2] Count 1 of the complaint was based on the attack on Heiddy; count 2 alleged Vasquez had allowed the pit bull to cause serious injury to another victim (Michael Mirmelli) between December 1, 2005 and January 31, 2006.

On August 24, 2006 Vasquez entered into a negotiated plea agreement: Vasquez pleaded no contest to count 1 of the complaint, the People's motion to dismiss count 2 was continued to the date of sentencing.[3] On September 7, 2006, before the Honorable Harvey Giss, Vasquez was sentenced to three years of formal probation on condition he serve 180 days in the Los Angeles County jail and not own any dogs during the period of probation. A victim restitution hearing was set for December 4, 2006. Count 2 was dismissed by the court pursuant to the terms of the negotiated agreement.

### 2. *The Restitution Hearing*

At the restitution hearing on December 4, 2006, also before Judge Giss, Vasquez stipulated to a restitution amount of $168,633.20, the damages suffered by Heiddy "so far." The court explained at the hearing, "The court has discussed this matter with counsel. The court is prepared to make an order for that amount, with the understanding that that's not—in all likelihood that will not be the final amount, but the district attorney has no objection to the court making that because—is there some kind of policy, a

---

[2] Section 399, subdivision (b), provides: "If any person owning or having custody or control of a mischievous animal, knowing its propensities, willfully suffers it to go at large, or keeps it without ordinary care, and the animal, while so at large, or while not kept with ordinary care, causes serious bodily injury to any human being who has taken all the precautions that the circumstances permitted, or which a reasonable person would ordinarily take in the same situation, is guilty of a misdemeanor or a felony."

[3] At the time he entered his plea of no contest to count 1, Vasquez waived his rights under *People v. Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220].

homeowners policy that might be involved in this?" The deputy district attorney responded, "There may be. I don't know anything about their civil remedies. What I'd like to do is just have this amount ordered, and then whatever else is outstanding be ordered pursuant to a civil judgment." The court agreed with the prosecutor's position, noting, "The victim has a civil lawyer . . . . [T]hey're going to pursue this. . . . This in no way impedes their right to prove the case for the amount that's owing." The court then stated, "Defendant is ordered to pay a civil judgment if one results in this case for the amount of that, and this does not supersede that. That supersedes this."

The order for restitution and abstract of judgment signed by Judge Giss following the restitution hearing specifies the restitution awarded is for the victim's "medical expenses." The minute order from the hearing directing payment of restitution provides, "Counsel and defendant stipulate to a restitution amount of $168,633.20 to date. The victim is still receiving medical treatment and any amount over the $168,633.20 will be pursuant to civil judgment."

### 3. *Heiddy's Civil Suit and Settlement*

In December 2006 Heiddy, through her parent and guardian ad litem, filed a civil action against Vasquez, Mora and Maria Ruiz, who apparently also lived at the North Hagar Street residence where Vasquez kept the pit bull, as well as the Los Angeles Unified School District, the Los Angeles County Department of Animal Care and Control and the City of San Fernando. Heiddy alleged causes of action for strict liability and negligence against Vasquez, Mora and Ruiz and for negligence against the school district, the county and the city.

On October 1, 2007 the superior court (Hon. Melvin D. Sandvig) approved a compromise of minor's disputed claim on behalf of Heiddy against Vasquez, Mora and Ruiz. The settlement provided for a total payment in favor of Heiddy of $300,000 from Mora's homeowners insurance, which also covered Vasquez as an insured. Of the total settlement, $75,000 was payable to Heiddy's attorney for legal fees, and $22,335 was identified as reimbursement for medical and other expenses paid by Heiddy or her attorney. The balance of $202,665 was used to fund a structured settlement annuity from Allstate Assignment Company. On November 29, 2007 Heiddy's counsel filed a request for dismissal with prejudice of her action as to Vasquez, Mora, Ruiz and the Los Angeles Unified School District only. The clerk entered the dismissal the same day.[4]

---

[4] In July 2007, prior to its order approving the compromise of disputed claim as to Vasquez, Mora and Ruiz, the court had sustained the Los Angeles County Department of Animal Control's demurrer to Heiddy's complaint without leave to amend and ordered the action

### 4. *Vasquez's Motion to Order Satisfaction of Judgment*

On August 24, 2009 Vasquez filed a motion "to order satisfaction of restitution," contending under *People v. Short* (2008) 160 Cal.App.4th 899 [73 Cal.Rptr.3d 154] (*Short*), although the $300,000 civil settlement payment had been made by Mora's homeowners insurance, that payment must be deemed to be restitution to the victim directly from Vasquez within the meaning of section 1202.4, subdivision (a)(1), and constituted a full offset to the $168,633.20 restitution award. In support of the motion Vasquez submitted the declaration of the Allstate Insurance Company claim representative who had handled Heiddy's claim. The representative stated Allstate Insurance had paid Heiddy its entire $300,000 policy limit for bodily injury in exchange for a release, through Heiddy's guardian ad litem and her legal counsel, of "any further claims against Mr. Vasquez for injuries [Heiddy] sustained as a result of the alleged dog bite." According to the representative, "Allstate would not have paid [Heiddy] its $300,000 policy limit if she did not give up her right to seek any further payment from Mr. Vasquez." No copy of any settlement documents or the release itself was submitted with Vasquez's motion.

The People filed a response, arguing the settlement payment by Allstate Insurance on behalf of Vasquez did not satisfy his court-ordered restitution in the criminal action. The People explained Heiddy's actual and future projected medical costs at the time of the restitution hearing far exceed the $168,633.20 ordered and contended the sum paid in the civil settlement for additional medical expenses (at most, $22,335) was anticipated by the restitution order, which expressly authorized Heiddy to recover any such additional costs through a civil action. The response included a copy of a March 2007 expert medical report prepared for Heiddy's attorney in connection with her civil action, which detailed her extensive injuries, multiple surgeries and other medical procedures and projected costs of future treatment.

The court denied Vasquez's motion following a hearing on September 3, 2009. The court explained, in its view, the issue raised by Vasquez's motion was not only whether a payment by Allstate Insurance on behalf of Vasquez was properly considered restitution directly from him—the legal question addressed in *Short, supra,* 160 Cal.App.4th 899—but also whether the settlement payment was for medical expenses included within the original restitution award, for which a setoff might be appropriate, or for additional, postrestitution-award costs, as well as pain and suffering, resulting from the

---

dismissed as to it. Division Eight of this court affirmed the order of dismissal in a nonpublished opinion in October 2009. (*Gomez v. Los Angeles County Department of Animal Control* (Oct. 28, 2009, B209366).) The action was apparently dismissed with prejudice as to the City of San Fernando on September 28, 2007.

pit bull attack: "That 168 was up to that point in time for all the expenses incurred by the victim for her serious surgeries. . . . [I]t was understood that there would be ongoing matters." The court reiterated its restitution order had expressly stated Heiddy was still receiving medical treatment and provided any additional losses she sustained could be recovered in a civil action.

## DISCUSSION

1. *Governing Law*

   a. *The relationship between restitution orders and civil actions*

Section 1202.4, subdivision (a)(1), provides, "It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." With several limited exceptions not relevant here, section 1202.4, subdivision (f), in turn, provides, "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court . . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record."[5]

An order of restitution pursuant to section 1202.4 does not preclude the crime victim from pursing a separate civil action based on the same facts from which the criminal conviction arose. (*Vigilant Ins. Co. v. Chiu* (2009) 175 Cal.App.4th 438, 442–443 [96 Cal.Rptr.3d 54]; *People v. Clifton* (1985) 172 Cal.App.3d 1165, 1168 [219 Cal.Rptr. 904].) "While a restitution order is enforceable 'as if [it] were a civil judgment' [citation], it is *not* a civil judgment. A restitution order does not resolve civil liability." (*Vigilant Ins. Co.*, at pp. 444–445.) Moreover, a restitution order reimburses the crime victim only for economic losses, not noneconomic losses such as pain and suffering, which are recoverable in a civil action. (See § 1202.4, subd. (f)(3); *People v. Fulton* (2003) 109 Cal.App.4th 876, 879, 884–885 [135 Cal.Rptr.2d 466]; *Vigilant Ins. Co.*, at p. 445.)

---

[5] Section 1202.4 reflects the mandate of article I, section 28, former subdivision (b), of the California Constitution, enacted by the voters on June 8, 1982 as part of Proposition 8, the "Victims' Bill of Rights," which declared that "all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (See *People v. Giordano* (2007) 42 Cal.4th 644, 652 [68 Cal.Rptr.3d 51, 170 P.3d 623].) This portion of the California Constitution was further amended by initiative (Prop. 9) on November 4, 2008; former subdivision (b) was renumbered subdivision (b)(13), and the text was modified slightly.

Just as a restitution order does not fully replicate a civil judgment, so too the judgment obtained in a civil action does not completely satisfy the purpose of an order of restitution entered in a criminal case. In addition to compensating the victim, a restitution order is intended to rehabilitate the defendant and to deter the defendant and others from future crimes. (*People v. Crow* (1993) 6 Cal.4th 952, 957 [26 Cal.Rptr.2d 1, 864 P.2d 80]; see *People v. Dehle* (2008) 166 Cal.App.4th 1380, 1386 [83 Cal.Rptr.3d 461]; *People v. Moser* (1996) 50 Cal.App.4th 130, 134–135 [57 Cal.Rptr.2d 647].) "A victim's right to sue a defendant for tortious conduct amounting to a crime and the state's right to impose a restitution order on a criminally convicted defendant are independent of one another." (*Vigilant Ins. Co. v. Chiu, supra*, 175 Cal.App.4th at p. 445.)

■ Because of the separate interests at stake and different purposes served by a restitution order and a civil action for damages by the crime victim, as well as the different categories of damages recoverable in the two proceedings,[6] the settlement of a civil action and release of the defendant by the crime victim does not discharge the defendant's responsibility to satisfy the restitution order: "Even when a victim obtains a settlement from a company that insured the defendant for civil liability, the court in a criminal action may order the defendant to pay victim restitution. This is so because the victim 'might rationally choose to accept an insurance settlement for substantially less than his or her losses rather than risk the uncertain . . . possibility that the defendant will pay the entire restitution amount' [citation], and the 'victim's willingness to accept the [insurance settlement] in full satisfaction for all civil liability, . . . does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society.' " (*Short, supra*, 160 Cal.App.4th at p. 903.) "A restitution order pursuant to a defendant's plea is an agreement between the defendant and the state. [Citation.] The victim is not party to the agreement, and a release by the victim cannot act to release a defendant from his financial debt to the state any more than it could terminate his prison sentence." (*People v. Bernal* (2002) 101 Cal.App.4th 155, 162 [123 Cal.Rptr.2d 622].)

### b. *Setoff rights for insurance payments to the victim*

■ Payments received by a crime victim from his or her insurance company or from an independent third party for economic losses suffered as a

---

[6] As discussed, section 1202.4 does not, in most cases, permit restitution for pain and suffering, damages that are generally recoverable in a civil tort action. Conversely, section 1202.4 permits recovery for certain types of economic loss not usually permitted in civil actions, including wages lost by a minor victim's parents due to time spent as a witness or in assisting the police or prosecution (§ 1202.4, subd. (f)(3)(E)) and attorney fees and other collection costs (§ 1202.4, subd. (f)(3)(H)).

result of the defendant's criminal conduct cannot reduce the amount of restitution the defendant owes. (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1389 [122 Cal.Rptr.2d 376] ["[T]he Pastores were entitled to a restitution order in an amount sufficient to 'fully reimburse' them for losses incurred as a result of appellant's criminal conduct—without regard to potential reimbursement from their homeowners' insurance carrier. A proper order thus would have included all proven losses they sustained, whether or not first submitted to their insurance carrier, and whether or not already reimbursed by their insurer."]; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272 [91 Cal.Rptr.2d 128] [defendant not entitled to reduction in amount of restitution for losses caused by his crime because victim's medical expenses were paid by Medicare and Medi-Cal]; see *People v. Birkett* (1999) 21 Cal.4th 226, 246 [87 Cal.Rptr.2d 205, 980 P.2d 912] ["the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all losses *his crime had caused*, and that such reparation should go entirely to the *individual or entity the offender had directly wronged*, regardless of that victim's reimbursement from other sources" (italics omitted)].)[7]

To the extent the defendant has his or her own insurance that has compensated the crime victim for losses included in the restitution order, however, the defendant is entitled to an offset for the sums paid. (*People v. Bernal, supra*, 101 Cal.App.4th at pp. 165, 168.) "The defendant's own insurance company is different than other sources of victim reimbursement, in that (1) the defendant procured the insurance, and unlike the other third party sources, its payments to the victim are not fortuitous but precisely what the defendant bargained for; (2) the defendant paid premiums to maintain the policy in force; (3) the defendant has a contractual right to have the payments made by his insurance company to the victim, on his behalf; and (4) the defendant's insurance company has no right of indemnity or subrogation against the defendant. In sum, the relationship between the defendant and its insurer is that payments by the insurer to the victim are 'directly from the defendant.' " (*Id.* at p. 168; accord, *People v. Jennings* (2005) 128 Cal.App.4th 42, 53–54 [26 Cal.Rptr.3d 709]; *Short, supra*, 160 Cal.App.4th at p. 903; but see *People v. Hamilton* (2003) 114 Cal.App.4th 932, 942–943 [8 Cal.Rptr.3d 190] [distinguishing *Bernal* but suggesting it may not have been properly decided; "[w]e need not resolve the question of whether a payment by a

_____

[7] A crime victim who has been compensated for the same economic losses by both the defendant and his or her own insurance company may be subject to a separate claim for reimbursement by the insurer. (§ 1202.4, subd. (f)(2) ["[d]etermination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party"]; see *People v. Birkett, supra*, 21 Cal.4th at p. 246; *In re Brittany L., supra*, 99 Cal.App.4th at p. 1389.)

defendant's insurer can be an offset to a restitution order because here the payment was not by the defendant's insurer"].)

In *People v. Jennings, supra*, 128 Cal.App.4th 42, following the reasoning of *People v. Bernal, supra*, 101 Cal.App.4th 155, a divided court held that payments made by an insurance company to a crime victim to settle a civil action against the defendant, who had pleaded guilty to driving under the influence of alcohol with a great bodily injury enhancement, and the defendant's mother, both of whom were insured drivers and thus covered by the mother's automobile insurance policy, must be applied to offset the defendant's restitution obligation to the extent they covered items included in the court's restitution order.[8] The majority explained, "We think the relevant inquiry for purposes of *Bernal* is whether the defendant has obtained insurance, and is thus an 'insured' and not the manner by which the insured procured the insurance coverage or how much he may have paid for it." "[R]ather than try to determine how the insurance was procured, a court must determine simply whether or not the insurer's payments to the victim were made on behalf of the defendant as a result of the defendant's status as an insured." (*Jennings*, at pp. 56, 57.)[9] Justice Benke dissented, disagreeing with both the basic analysis in *Bernal* and, accepting for the sake of argument that *Bernal* was correctly decided, what she termed the majority's unjustifiable expansion of its holding to include a defendant who had not himself or herself obtained and paid for the liability insurance that funded the settlement. (*Jennings*, at pp. 59–62 ["allowing a defendant to offset a direct restitution obligation with monies paid by his liability insurer effectively disengages the amount of direct restitution the defendant must pay from the calculation of the harm caused and thus steals from the restitution obligation its intended rehabilitative and deterrent effect"].)

---

[8] The settlement agreement allocated 15 percent of the $105,000 settlement payment to the victim's medical expenses and 85 percent to pain and suffering. (*People v. Jennings, supra*, 128 Cal.App.4th at p. 47.) The court limited the restitution offset to $15,750—15 percent of $105,000—"less the amount determined to have been used to pay attorney fees" to obtain the settlement. (*Id.* at p. 59.)

[9] In *In re Tommy A.* (2005) 131 Cal.App.4th 1580 [33 Cal.Rptr.3d 103] a different panel from the same court, without mentioning *People v. Jennings, supra*, 128 Cal.App.4th 42, held a settlement payment by an insurance company that covered an innocent car owner's vehicle that had been unlawfully taken by a minor did not relieve the minor of his restitution obligation to the crime victim who had been injured by his hit-and-run driving, notwithstanding the fact the insurer obtained a release of all liability on behalf of both the owner and the unrelated minor: "[B]ecause the settlement payment by [the owner's] insurer to the victim is a payment from a source that is completely distinct and independent from [the minor], it does not constitute 'restitution directly from' [the minor]" within the meaning of the Welfare and Institutions Code provisions requiring restitution from juveniles in delinquency proceedings in a manner that parallels section 1202.4. (*Tommy A.*, at p. 1583.) The court expressly reserved the question "whether a settlement payment made to a victim by an insurer of a juvenile delinquent's parent, guardian, or other person legally responsible for the juvenile's care and support, would qualify as 'restitution directly from [the] minor.' " (*Id.* at p. 1590, fn. 6.)

In *Short, supra*, 160 Cal.App.4th 899, the primary case authority upon which Vasquez relied in the trial court, the defendant had seriously injured the victim while driving his employer's vehicle within the course and scope of his employment but under the influence of alcohol. The defendant, sentenced to four years four months in state prison, was ordered to pay victim restitution of $450,042.65 for medical costs the victim had incurred. The victim and his wife later filed a civil action against the defendant and the defendant's employer, seeking damages for medical bills, pain and suffering, lost wages, loss of consortium and property loss. To settle the lawsuit the employer's insurer paid its policy limit of $3 million and, in return, received a waiver of claims by the victim and his wife against both the defendant and the employer. The defendant then moved in his criminal case to reduce the victim restitution order by the amount of the settlement paid to the victim. The trial court denied the motion because the defendant was not a named insured under the policy and had not paid the insurance premiums. The Court of Appeal reversed, holding the defendant was entitled to an offset for that portion of the civil settlement properly allocated to the victim's medical costs included in the restitution order: "[T]he insurance company was contractually obligated to compensate the victim on behalf of defendant as well as on behalf of his employer, even though defendant did not procure the policy or make the premium payments. This is exactly what the insurance company did by paying $3 million to the victim in exchange for his release of both defendant and his employer from further liability arising out of the collision. [¶] Thus, the settlement payment is deemed to be restitution to the victim made directly from defendant within the meaning of section 1202.4." (*Id.* at p. 905.) The appellate court remanded the matter for the trial court to determine what portion of the $3 million settlement must be allocated to reduce defendant's restitution obligation. (*Ibid.*)

### 2. Standard of Review

We generally review a trial court's restitution order for abuse of discretion. (*People v. Giordano, supra*, 42 Cal.4th at p. 663.) "Although a trial court's 'allocation of restitutionary responsibility' is reviewed for an abuse of discretion, an order resting upon a ' "demonstrable error of law" ' constitutes an abuse of the court's discretion." (*People v. Jennings, supra*, 128 Cal.App.4th at p. 49.)

### 3. The Trial Court Properly Denied Vasquez's Motion to Order Satisfaction of Judgment

Whether we follow the holdings of *Short, supra*, 160 Cal.App.4th 899, and *People v. Jennings, supra*, 128 Cal.App.4th 42, as Vasquez urges, or the contrary reasoning of Justice Benke's dissent in *Jennings* and the suggestion

in *People v. Hamilton, supra*, 114 Cal.App.4th 932, as advanced by the Attorney General, the trial court properly denied Vasquez's motion to order satisfaction of restitution. As discussed, the cases construing section 1202.4 and the effect of a crime victim's acceptance of a civil settlement on the defendant's obligation to satisfy a restitution order have all concluded a civil settlement and release/waiver of liability by the victim do not preclude or necessarily satisfy a properly entered restitution order. (*Vigilant Ins. Co. v. Chiu, supra*, 175 Cal.App.4th at p. 445 ["[s]ince restitution orders and civil judgments are issued for different purposes, a victim suffering from economic losses as a result of a criminal act has a right to both"]; *People v. Bernal, supra*, 101 Cal.App.4th at p. 164 [the crime victim's "written release of [the defendant] and his insurance company did not bar [the defendant's] restitution obligation"]; *Short, supra*, 160 Cal.App.4th at p. 903 [same].)

Moreover, that the civil settlement here—which resolved the liability of not only Vasquez but also Mora and Ruiz and was intended to compensate Heiddy for all her damages, noneconomic as well as economic—was for a sum greater than the restitution order does not mean, as Vasquez argues, he is entitled to a credit for the full amount paid through Mora's homeowners policy. (See *Short, supra*, 160 Cal.App.4th at p. 905 [remanding for trial court to determine what portion of $3 million settlement should be allocated to reduce defendant's $450,000 restitution obligation].) At most, Vasquez has the right to an offset for the portion of the settlement payment made on behalf of Vasquez and allocable to medical expenses included within the restitution order. (*People v. Jennings, supra*, 128 Cal.App.4th at p. 59 [restitution offset limited to portion of settlement allocated by the parties to medical expenses less any amount for attorney fees to obtain the settlement]; see *People v. Bernal, supra*, 101 Cal.App.4th at p. 165 [remanding for trial court to determine restitution obligation after offset for insurance payments for losses subject to the restitution order].)

As the party seeking an offset or credit to, or modification of, the restitution order to which he had previously stipulated, Vasquez had the burden of proof as to "each fact the existence or nonexistence of which is essential to the claim for relief . . . he is asserting." (Evid. Code, § 500; see *People v. Millard* (2009) 175 Cal.App.4th 7, 33–34 [95 Cal.Rptr.3d 751] [criminal defendant has burden of proving both that attorney fees awarded as victim restitution included fees to recover general or noneconomic damages and the proper apportionment between recoverable and nonrecoverable fees].) He failed to carry that burden.

■ The evidence presented in connection with Vasquez's motion established the December 4, 2006 restitution order for $168,633.20 was expressly limited to medical expenses incurred by Heiddy "to date" or "so far." In

addition, as reflected in the documents submitted with the motion to approve minor's compromise, only $22,335 of the $300,000 settlement payment by Allstate Insurance was for reimbursement of medical and other expenses paid by Heiddy or her attorney. Thus, even under *Short, supra,* 160 Cal.App.4th 899, Vasquez was entitled to a credit of no more than $22,335. The opposition memorandum and supporting exhibits submitted by the People, however, demonstrated Heiddy had incurred additional medical expenses after the date of the restitution order and would likely have significant medical expenses in the future, as well. Based on this evidence, the trial court reasonably inferred the portion of the civil settlement attributable to medical expenses did not include those expenses included in the court's restitution order. Rather, as contemplated at the time the restitution order was entered, Heiddy recovered in her civil action sums for additional losses (both economic and noneconomic) she had sustained. The trial court's ruling that Vasquez had failed to establish his entitlement to an offset is supported by substantial evidence and falls well within the court's ample discretion in this matter.

## DISPOSITION

The order is affirmed.

Zelon, J., and Jackson, J., concurred.

A petition for a rehearing was denied December 28, 2010, and the opinion was modified to read as printed above.