Filed 1/27/14  P. v. Jones CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

<table>
<tr><td>THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>NICOLE RENEE JONES,<br><br>      Defendant and Appellant.</td><td>E057659<br><br>(Super.Ct.No. RIF1102953)<br><br>OPINION</td></tr>
</table>

APPEAL from the Superior Court of Riverside County.  Jean P. Leonard, Judge.  Affirmed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Nicole Renee Jones pled guilty to one count of felony fraud in obtaining government aid in an amount more than $400.00 (Count 1—former Welf. & Inst. Code § 10980, subd. (c)(2)).[1]  Pursuant to the plea agreement, the court reduced count 1 to a misdemeanor upon the People's motion pursuant to Penal Code section 17, subdivision (b).[2]  After a later, contested victim restitution hearing, the court ordered defendant pay $56,952 to the County of Riverside Housing Authority (Housing Authority).  On appeal, defendant contends the court was unaware it could grant restitution in less than a full amount if it found compelling and extraordinary reasons for doing so.  The People contend the trial court knew it had discretion to impose less than full restitution and did so.  We affirm.

---

[1] The court neglected to take an oral, factual basis for the plea.  The sole factual basis for the plea is a statement contained within the plea agreement initialed, presumably, by defendant reading "I agree that I did the things that are stated in the charges that I am admitting."  Although not required, "the trial court can satisfy this requirement by inquiring of defense counsel regarding the factual basis of the plea . . . [by] 'request[ing] that defense counsel stipulate to a particular document that provides an adequate factual basis, such as a complaint, police report, preliminary hearing transcript, probation report, [or] grand jury transcript . . . .' [Citation]" (*People v. Palmer* (2013) 58 Cal.4th 110, 112.)  Here, because the parties did not stipulate the preliminary hearing was a factual basis for the plea, the court which presided over the restitution hearing was not the court which presided over the preliminary hearing, and no party below sought to admit the evidence adduced at the preliminary hearing at the restitution hearing, we do not rely on the preliminary hearing for our factual recitation or analysis.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

2

FACTS AND PROCEDURAL HISTORY

Defendant began receiving Low Income Rental Assistance (section 8) subsidies from the Housing Authority beginning on July 26, 1999.  Once approved, the government issues vouchers which subsidize the individual's rental payments.  Every year thereafter, recipients must sign a personal declaration wherein they certify their household income and family composition under penalty of perjury.  In a declaration filed by defendant on June 12, 2007, defendant listed her minor son, Winston B., as a resident with income from social security of $742.00 a month.

Around January 2011, an investigator from the District Attorney's Office shared information with Roberto Chavez, a Senior Development Specialist at the Housing Authority, regarding defendant.  Chavez began investigating defendant's receipt of benefits in the period between June 2007, and January 2011.  The Housing Authority made subsidy payments of $1,205 a month on behalf of defendant between July 1, 2007, and September 31, 2007.  It made subsidy payments of $1,199 a month through February 28, 2008.  It continued to make subsidy payments between March 1, 2008, and June 30, 2011, in unspecified monthly amounts.  The total payments made on behalf of defendant between July 1, 2007, and June 30, 2011, amounted to $56,952.

Chavez reviewed all defendant's personal declarations to determine "if there [were] any omissions or false information included on the annual personal

3

declarations." He also examined documents submitted to him from the District Attorney's Investigator regarding Winston B.'s criminal history. Those documents reflected Winston B. had been arrested on five occasions between September 27, 2003, and May 22, 2007.[3] Defendant placed Winston B.'s "name on the personal declaration forms every year she submitted them." In her declarations beginning in June 2007, she omitted any reference to the multiple arrests and criminal activity conducted by Winston B.

Chavez testified that any commission of a violent or drug related criminal offense by an individual residing in the subsidized unit disqualifies the applicant for the subsidy.[4] "The Housing Authority made a payment on behalf of the entire household based on the certification that [defendant] submitted every year." Providing false information in the annual declarations is grounds for termination from the program. "It is the Housing Authority's policy that if one member is – if the family commits fraud, the entire family is terminated from the program." Thus, any amount of subsidy issued on behalf of defendant after July 1, 2007, was an overpayment because defendant had not been forthcoming regarding Winston B's criminal history.

---

[3] Police arrested Winston B. for three separate burglaries, possession of marijuana, and battery.

[4] The Housing Authority may terminate someone from the program upon its determination there is a preponderance of evidence to support that a criminal act actually occurred. Such a determination may be made upon police reports or witness statements. No conviction is required.

A letter dated April 6, 2011, from the Department of Health to the Housing Authority on behalf of defendant, reflected Winston B. participated in a Wraparound program from September 2007, to January 2009. "'Wraparound consists of a team of mental health professionals who work with families, such as [defendant's], to enable a child who is at risk of out-of-the –home placement to be able to stay living with his family. [¶] In [defendant's] case, her son, Winston, was at risk of being placed in a group home through Riverside County Probation due to law violations, and his probation officer was actively involved on the Wraparound team.'"

The People charged defendant with felony fraud in obtaining government aid in an amount more than $400.00 (Count 1 – former Welf. & Inst. Code, § 10980, subd. (c)(2)), felony fraud of a housing program in an amount exceeding $400.00 (Count 2 – former § 487, subd. (i)), and four counts of fraud (Counts 3-6 - - § 118). The latter four counts were based on defendant's annual declarations filed on June 12, 2007, February 4, 2008, April 13, 2009, and April 5, 2010. Pursuant to a plea agreement, defendant pled guilty to Count 1, in return for which Count 1 was reduced to a misdemeanor, the remaining counts were dismissed, and defendant was granted summary probation.[5]

_____

[5] Defendant also, simultaneously, pled guilty to misdemeanor resisting arrest in another case. A second charged offense in that case was dismissed. The other case is not at issue in the instant appeal. The plea in the instant case provided the dismissed charges "could be considered in determining the restitution . . . in the case."

Chavez also reviewed information regarding Pamela Jones, defendant's mother, whom he contended was an unauthorized tenant of defendant's home. Defendant had never listed Jones as a resident in any of defendant's annual declarations. Police reports reflected Jones had called to report a ring stolen from her bedroom in defendant's residence. Pay stubs and insurance documents located in the bedroom reflected Jones resided in the household. Chavez testified that if defendant's only omission had been her failure to report her mother's residence in the home and her mother's income, defendant would have received only $577.00 a month in subsidies between February 1, 2009, and May 31, 2009. However, Jones's residence in the home was a moot point because defendant's failure to report Winston B.'s criminal activity eliminated entitlement to any subsidies during the entire period investigated.

Jones testified she had always owned her own home and never lived with defendant. She visited defendant's home and babysat the children, sometimes staying for up to 10 days. She had once had an item of mail addressed to her sent to defendant's residence.

The court indicated that it was interested in having Chavez calculate the amount of subsidy defendant would have received if Winston B. had not been residing in the home. The court expressed concern that requiring defendant to kick Winston B. out of the home prior to or after he engaged in criminal activity so that defendant would not have to declare such offenses, put her in an untenable

6

position since everyone else in the house apparently was obeying the law. "What I would like to do is I would like to find out if we could extract Winston [B.] from the final figure, from this $56,952. . . . If we could somehow see what would – what would [defendant] and her four children have received if they were living there, and they were properly living there. And it sounds to me like there will be some overage. There's going to be some overpayment."

Nevertheless, the court also noted that "Before I let [defense counsel] speak, although I have these concerns, I don't think that the Court can just step in and change the rules. Do I think the rules are right? No. I think that this puts a family in a very difficult position, and I've already voiced that." "[T]his is a restitution hearing. I don't think I can insert my own rules for the rules of the Housing [Authority], whether I like it or not. So I think, at this point, I don't see any law that tells me that I could override the rules of the Housing [Authority] and go forward and just come up with another scenario and another set of rules and another calculation."

The court found overpayment of $56,952 for the period between July 1, 2007, and June 30, 2011, and ordered restitution in that amount. The court subtracted the administrative fee finding "that there was some evidence in the testimony today that she was trying to be forthcoming with the issues of the Wraparound Program, and the fact that she was forthcoming with the amounts of social security received by Winston [B.] . . . ."

Defense counsel requested the recalculation of subsidies to account for the award of payments specific only to Winston B. during the pertinent period. The court noted, "I don't think that the Court has the ability to rewrite the rules and to come to any other decision in this case without the stipulation of the parties. . . . Do I like it? No. Do I think it's fair? Probably not. But I think under the circumstances, I have no other choice but to make this finding." "I don't know of any law that would allow me to do that. I mean, rewriting the Housing Authority's rules and regulations, and I don't see – you've not given me any." "And I can indicate on the record, again, I don't like it, but I don't see that I have any authority to just willy-nilly come up with my own numbers. I have – I don't know that I have any authority to do that."

DISCUSSION

Defendant contends the court erred because it was unaware it had discretion to award less than full restitution if it found compelling and extraordinary circumstances pursuant to section 1202.4, subdivision (f). Defendant maintains the court's initial request for recalculation of the subsidies and repeated statements it did not believe the Housing Authority's rule was fair reflected that, had it been aware of its discretion, it would have awarded restitution in an amount less than it did. We disagree.

"A sentence without an award of victim restitution is invalid. [Citations.] A trial court has no discretion over the issuance of the award itself [citation] and

8

'really very little discretion' over the amount of the award [citation]. 'The statute requires the award be set in an amount which will fully reimburse the victim for his or her losses unless there are clear and compelling reasons not to do so.' [Citation.] A court's reasons for awarding less than full restitution must be stated on the record. [Citation.] Thus, just as a sentence lacking a victim restitution award is invalid, a sentence awarding less than full victim restitution is similarly unauthorized when the court fails to state clear and compelling reasons for its decision." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1225-1226 (*Brown*), fn. omitted.)

"In addition to compensating the victim, a restitution order is intended to rehabilitate the defendant and to deter the defendant and others from future crimes. [Citations.]" (*People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133) "A victim's restitution right is to be broadly and liberally construed." (*People v. Williams* (2010) 184 Cal.App.4th 142, 147.) "In reviewing a trial court's restitution order, we will not overturn its decision unless it constitutes an abuse of discretion." (*People v. Fortune* (2005) 129 Cal.App.4th 790, 794.)

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*Brown, supra,* 147 Cal.App.4th at p. 1228.) "Remand for resentencing is not required, however, if the record

9

demonstrates the trial court was aware of its sentencing discretion. [Citations.] Further, remand is unnecessary if the record is silent concerning whether the trial court misunderstood its sentencing discretion. Error may not be presumed from a silent record. [Citation.] '"[A] trial court is presumed to have been aware of and followed the applicable law." [Citations.]' [Citation.]" (*Id.* at pp. 1228-1229.)

Here, the record does not reflect the court misunderstood its discretion to order less than full restitution. The Housing Authority requested victim restitution in an amount totaling $71,190.00, which included administrative fees in the amount of $14,238.00. The court exercised its discretion in ordering less than full restitution when it declined to award the administrative fees as part of the victim restitution. It did so because it believed there were compelling circumstances due to what it considered as defendant's attempts to comply with the Housing Authority's regulations regarding reporting her son's criminal activity and income. Thus, the court acted in proper exercise of its discretion to reduce the amount of victim restitution from a full amount where it found compelling and extraordinary circumstances.

Defendant contends the reduction of administrative fees was not commensurate with the court's consciousness of its discretion to reduce full victim restitution for the losses actually incurred by the Housing Authority. The court in *People v. Hudson* (2003) 113 Cal.App.4th 924 (*Hudson*), held the amount of victim restitution due a defrauded government agency "'should be calculated by

10

subtracting the amount the government *would have paid had no acts of fraud occurred* from the amount the government actually paid." (*Id*. at p. 928, quoting *People v. Crow* (1993) 6 Cal.4th 952, 962 (*Crow*).) However, in both *Crow* and *Hudson*, the issue concerned situations in which the defendant would have been entitled to retain some of the government payments regardless of the fraud. (*Crow*, *supra*, at p. 955; *Hudson*, *supra*, at pp. 928-930; *People v. Akins* (2005) 128 Cal.App.4th 1376, 1380, 1382-1385 (*Akins*).) Here, it is undisputed defendant would not have been entitled to receive *any of the benefits* due to her fraud.

Although the court empathized with defendant and her family and believed the result was not fair, this did not justify denying the Housing Authority its mandatory, broadly and liberally construed, full restitution. Moreover, although *Hudson* held a court has discretion to reject the method of calculation used by a government agency in determining victim restitution, it did not hold the contrary, i.e., that the court *must* reject such a calculation. (*Hudson, supra,* 113 Cal.App.4th at p. 924; *Akins, supra,* 128 Cal.App.4th at pp. 1386-1389 [Court's discretion to adopt or reject government agency's method of calculating victim restitution extends to restitution for "purposes of administrative recoupment . . . ."]; See also *People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1411 [Private attorney fees and private investigator's fees expended by victim in investigating embezzlement by employee recoverable as victim restitution].) The court's disallowance of permissible administrative fees in its restitutionary award reflect its cognizance of

11

its discretion to allow less than full victim restitution in compelling and extraordinary cases.  The court acted within its discretion.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

RICHLI

J.