Filed 8/18/14  P. v. Moreno CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040233 |
| Plaintiff and Respondent, | (Monterey County<br>Super. Ct. No. SS130639A) |
| v. | |
| ROGER MORENO, | |
| Defendant and Appellant. | |

# I. INTRODUCTION

On May 9, 2013, an information was filed charging defendant Roger Moreno with willful, deliberate, and premeditated attempted murder (count 1; Pen. Code, §§ 664, 187, subd. (a))[1] involving the personal infliction of great bodily injury under circumstances of domestic violence (§ 12022.7, subd. (e)) and personal use of a knife (§ 12022, subd. (b)); criminal threats (count 2; § 422, subd. (a)); kidnapping (count 3; § 207, subd. (a)); and dissuading a witness from reporting a crime (count 4; § 136.1, subd. (b)(1)), all arising out of conduct involving the same victim on January 29, 2013.  On August 8, 2013, by plea agreement, the prosecutor moved to strike the allegations that the attempted murder was willful, deliberate, and premeditated, and defendant pled no contest to attempted murder and dissuading a witness and admitted his personal use of a knife, in anticipation of a sentence ranging from felony probation to up to 10 years in prison.

---

[1] Unspecified section references are to the Penal Code.

At sentencing on September 19, 2013, after hearing from the victim, her grandfather, and defendant, the trial court imposed the maximum possible sentence, consisting of the nine year upper term for the attempted murder, plus a one year enhancement for personal use of a knife. The court also imposed a concurrent two years, the middle term, for dissuading a witness. The court ordered a victim restitution fine of $5,600, and direct victim restitution of $109,229 to cover the hospital bills described in the probation report, plus $630.33 to reimburse the Victim Compensation and Government Claims Board, as well as $600 requested by the prosecutor to cover the victim's cost of withdrawing from school. Defendant was given 203 days of presentence credit based on 177 actual days in custody. Because attempted murder is a violent felony (§ 667.5, subd. (c)(12)), defendant's good time/work time credits were limited to 26 days or 15 percent. (§ 2933.1, subd. (c).) The remaining charges were dismissed on the prosecutor's motion.

Through counsel, on October 3, 2013, defendant filed a notice of appeal anticipating raising sentencing issues without obtaining a certificate of probable cause. By letter dated February 24, 2014, this court notified defendant that his appointed appellate counsel filed a brief inviting us to identify any arguable appellate issues. Defendant has accepted our invitation to file a letter raising issues. After reviewing the record, we conclude that there is no issue that counsel should have argued on appeal.

## II. STANDARD OF REVIEW

We review the entire record to determine whether appointed counsel has correctly determined that there are no arguable issues. (*People v. Wende* (1979) 25 Cal.3d 436, 441.) In performing our review, we are required to give a brief description of the facts, the procedural history, the crimes of which the defendant was convicted, and the punishment imposed, and to address any contentions personally raised by the defendant. (*People v. Kelly* (2006) 40 Cal.4th 106, 124.)

2

# III. THE OFFENSES

Defendant and his eventual victim, Mariah, met in 2012 as coworkers at a McDonald's in Salinas and began dating and staying at each other's residences.[2]  As a manager, Mariah occasionally had to speak with an ex-boyfriend who also worked there. After dating for seven or eight months, on January 28, 2013, defendant broke up with Mariah because he felt jealous and insecure.

The following day, January 29, Mariah went out with some girlfriends and did not respond to defendant's texts asking her whereabouts.  When she answered his telephone call, he said he wanted to talk about their relationship.  When she got home, defendant was waiting in his car, so she left her purse and cell phone in her car and got into his car. Defendant questioned her about where she had been and whether she had been drinking. She refused to answer because they were no longer a couple.  He also asked her if she knew why he was wearing black.  When she leaned toward the door, she thought defendant had punched her in the chest until she saw blood.  He was holding a kitchen knife.  He tried to stab her in the chest again, but she fended off the blow, and he stabbed her hand.  According to defendant, he was driving his mother's car, and the knife was one of the work tools she carried in her car.

Before Mariah could get out of the car, defendant drove away and onto the freeway.  Before losing consciousness, Mariah repeatedly implored defendant to let her out of the car to get medical attention or take her to a hospital.  Defendant said there was no reason to take her to the hospital after what he had done.  He told her he was going to throw her body in the ocean.  About 20 minutes after leaving Mariah's house, defendant called someone on his cell phone and said, " 'I did it.' "Mariah went in and out of

---

[2]  We summarize facts presented in the probation report and in the victim's statement at sentencing, as defendant waived a preliminary examination.

3

consciousness and defendant checked her pulse and tried to wake her, calling her name. She ignored him. Defendant vomited. His cell phone battery died, and he asked Mariah if she had a phone or money, which she did not have. She again asked to be taken to a hospital, and he refused, saying he did not know where one was located. They stopped at a Denny's in Gilroy. Defendant asked if she was going to tell anyone what happened if she got help. She said she would say someone else stabbed her. She was afraid she would die if she did not cooperate with him. Defendant put the knife to his wrist, saying he would kill himself. She told him she did not want that. She just wanted help for herself. They got back on the freeway and he threw the knife out the window. When she again promised she would say someone else had stabbed her, defendant brought her to a gas station in San Jose and had someone call the police. It was defendant's idea for Mariah to say she was stabbed while defendant was trying to buy drugs.

That night Mariah told the police she was stabbed during a robbery. She was taken to a regional medical center in San Jose where she remained for five days. Mariah had a puncture wound in her left chest, lacerations to both hands, and a fractured left middle finger. When defendant visited Mariah in the hospital, he always asked her if she had told anyone what really happened. He visited her at home frequently after she left the hospital. She spent time with him because he was so controlling. They did not talk about the stabbing unless she was mad at him. He was apologetic, saying it was not like him.

Mariah told a friend what really happened. Her friend told Mariah's parents. On March 26, 2013, her parents brought Mariah to the Salinas Police Department and she told them how she was stabbed.

Defendant was taken into custody on March 26, 2013. He told his mother he was unable to control himself.

4

## IV. TRIAL COURT PROCEEDINGS

After a complaint was filed, defendant appeared in custody and the court issued a protective order (Form CR-160) under section 136.2. Defendant later appeared with counsel, waived formal arraignment, and also waived preliminary examination.

On August 8, 2013, defendant was advised of his rights and entered no contest pleas after the court found that he had knowingly, voluntarily, and intelligently waived those rights. He was also advised that the crimes he was admitting qualified as strikes and at least one was a violent felony, which would limit his conducts credits to 15 percent.

The written plea agreement (Form CR-400) initialed and signed by defendant provides, "I hereby waive and give up all rights regarding state and federal writs and appeals. This includes, but is not limited to, the right to appeal my conviction, the judgment, and any other orders previously issued by this court. I agree not to file any collateral attacks on my conviction or sentence at any time in the future. I further agree not to ask the Court to withdraw my plea for any reason after it is entered." The paragraph applicable to a non-stipulated sentence provides in part: "I hereby waive and give up all rights to appeal, writ, litigate, challenge or contest in the future any order issued by this court made *before* the date indicated next to my signature below. I give up the same rights concerning all contents of this waiver of rights form and conditions of my entry of plea and conviction as stated herein." He orally acknowledged that the appeal waiver was part of his agreement.

Defendant was 20 years old at the time of sentencing in September 2013. At the hearing, defendant apologized to the victim and her family for letting them down and making a mistake, saying he acted on a broken heart. Mariah described the effects of the stabbing. Her left middle finger will never straighten out again. She no longer trusts people and is afraid of everyone. She constantly looks around for assailants. She had to drop out of school after a week because she was not ready to have people around, so she

had to repay $600. She missed three months of work and was relocated to another workplace.

The trial court considered both the nature of the crime, "one of the most brutal and vicious attacks that could happen," and the nature of defendant, someone "with absolutely no record of crime who appears to be well regarded by his family and friends, who is accepted and appreciated by his co-workers, who appears to be hard working and goal oriented but who commits a crime of this magnitude." The court emphasized that defendant not only stabbed her, but then took her away from her friends and family and did not take her to a hospital. "What he does is he worries about his own welfare and tries to figure out what he's going to do to protect his own life, to protect his own future. And he puts that ahead of her life." Only after a story is worked out to protect him does he agree to call 911. When she is released from the hospital, he stays close to her "in a position of control … so that she can't tell other people." In selecting the upper term, the court noted aggravating factors. The crime involved great violence and great bodily harm. Defendant was armed with a knife. The victim was particularly vulnerable. The presence of a knife and his telephone call indicated some planning. In mitigation, defendant voluntarily acknowledged wrongdoing at an early stage and had a minimum record.

Defense counsel objected to the victim restitution for hospital expenses, saying "there's no information presented that the victim was out-of-pocket for $109,229. I know that that's what the hospital bill was, but we don't have them here as victims saying that they're owed that much money." The court noted that it was the hospital bill, either owed to the victim or the hospital. The prosecutor said that it would go to the victim, not her insurer.

## V. ISSUES RAISED BY DEFENDANT

A plea of guilty or no contest restricts the issues that may be raised on appeal. The failure to obtain a certificate of probable cause after a plea of guilty or no contest further

6

limits what issues may be raised. (§ 1237.5; Cal. Rules of Court, rule 8.304(b)(4)(B).)

An express waiver of the right to appeal further limits what a defendant can assert on appeal. (*People v. Panizzon* (1996) 13 Cal.4th 68, 84.) However, a general waiver of the right to appeal does not preclude a defendant from asserting post-waiver errors not contemplated by the waiver. (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1663; *People v. Sherrick* (1993) 19 Cal.App.4th 657, 659.)

Defendant poses several questions in the letter he submitted after the filing of his counsel's brief. He claims a continuance of sentencing was denied, but the record does not support this claim. He also questions how an admission to his mother could be used against him from a three-way call involving the victim if the victim was not to contact him. The restraining order in the record is not mutual; it restrained defendant, not Mariah.

Defendant questions the charges qualifying as two strikes. A conviction of attempted murder is warranted when the perpetrator stabs a victim and watches her bleed and lose consciousness while refusing her requests to obtain medical assistance. Attempted murder is deemed a violent felony (§ 667.5, subd. (c)(12), as well as a serious felony (§ 1192.7, subd. (c)(9)). Witness dissuasion is deemed a serious felony. (§ 1192.7, subd. (c)(37).)

Defendant questions why he got the maximum sentence. In selecting the upper term for attempted murder, the court relied on recognized aggravating factors: the crime involved great violence and great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)); defendant used a weapon (*id*. at (a)(2)); the victim was particularly vulnerable when he isolated her from friends and family (*id*. at (a)(3)); and some planning was suggested by the availability of a knife and defendant's phone call saying he had done it (*id*. at (a)(8)).

Finally, defendant questions aspects of the victim restitution award. Victim restitution is a right established in California's Constitution, Article 1, section 28, subdivision (b) and implemented by statute. "[I]n every case in which a victim has

7

suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) The restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct … ." (*Id.* at subd. (f)(3).) "The court shall order full restitution unless it finds compelling and extraordinary reason for not doing so … ." (*Id.* at subd. (g).)

As to the $600 to reimburse the victim for the cost of withdrawing from school, it is foreseeable that an assault like that here would make her uncomfortable around people and unable to attend school. As to the hospital bills of $109,229, defendant asks why he should pay this amount if it was paid by the victim's insurer and not the victim. Medical expenses are recognized by statute as among the economic losses that may result from the commission of a crime. (§ 1202.4, subd. (f)(3)(B).) It is the injured individual and not her medical provider or insurer who is regarded as the "direct victim of a crime" within the meaning of section 1202.4. subdivision (k)(2). In calculating the victim's loss resulting from the defendant's criminal conduct, courts disregard any payments towards that loss received by the victim from the victim's insurer or another third party. A criminal defendant is not entitled to take advantage of his victim's foresight in obtaining insurance. (*People v. Birkett* (1999) 21 Cal.4th 226, 246; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272-1273; *People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133-1134.)

## VI. DISPOSITION

The judgment is affirmed.

8

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Márquez, J.