Filed 5/31/23  P. v. Maldonado CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VERONICA MALDONADO,<br><br>    Defendant and Appellant. | D080418<br><br><br>(Super. Ct. No. JCF003702) |

APPEAL from an order of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed as modified.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION[1]

Veronica Maldonado was granted probation after she pled no contest to two counts of hit and run driving resulting in injury (Veh. Code, § 20001, subd. (b)(1)) and death or serious injury to another person (Veh. Code, § 20001, subd. (b)(2)). As a condition of probation, she was ordered to pay a total of $1,190,328.77 in restitution to two of the victims she injured, Garcia and Sanchez, and the widow of the victim she killed, Rodriguez. She appeals certain aspects of the trial court's restitution order.

1. *Restitution to Garcia*

The trial court awarded Garcia a total of $415,363.36, including $398,798.44 for medical expenses and $9,363.63 for lost wages.

Maldonado contends, and the People concede, the award for medical expenses should be reduced to $5,002.30 because the California Victim Compensation Board (CVCB) made payment to Garcia's medical providers to satisfy the balance of her medical expense claims. (See Gov. Code, § 13957.2, subd. (a) ["A provider shall not charge a victim or derivative victim for any difference between the cost of a service provided to a victim or derivative victim and the [CVCB] program's payment for that service."].) The concession is proper and the restitution order shall be so modified.

Regarding her lost wages, Garcia testified at the restitution hearing she missed six months of work as a nurse in Mexico; that she earns 1,030 pesos per day in Mexico and workers there get paid for seven days each week; and that she received 60 percent of her wages for the first three months she could not work. The court calculated Garcia's lost wages, based on the

---

[1] We resolve this case by memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1.

stipulated conversion rate of 20 pesos to the dollar, to total $9,363.63. Maldonado asserts the $9,363.63 award for lost wages is not supported by substantial evidence because the amount should have been offset by Garcia's receipt of 60 percent of her salary for the first three months she could not work as a result of her injuries.

"The standard of proof at a restitution hearing is preponderance of the evidence" and "[a] victim's statement of economic loss is prima facie evidence of loss." (*People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115 (*Grandpierre*).) Once a prima facie case of economic loss has been made, "the defendant has the burden to disprove the amount of losses the victim claim[s]." (*Ibid*.) Here, the People contend Maldonado presented no evidence to disprove Garcia suffered an economic loss of 100 percent of her wages, including how Garcia's 60 percent wages were paid and whether she may have had to deplete sick leave or some other benefit to get paid. In response, Maldonado speculates Garcia did not have to deplete sick leave or other benefits and that even if she did use sick leave, it may not have been any value to her because she no longer works for that employer. Rather than speculate, it was Maldonado's burden to elicit evidence to support such possibilities and she failed to do so. (*Ibid*.) Consequently, on this record, we conclude the court did not abuse its discretion when it awarded Garcia for 100 percent of her wages during the time that she could not work. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 499 [" 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' "].)

2.    *Restitution to Rodriguez*

The trial court awarded Rodriguez $763,415.41 in restitution, including $11,638 for funeral expenses, $2,259.98 for property damages, and $742,424.23 for loss of her deceased husband's support.

Maldonado contends, and the People concede, the award for funeral expenses was erroneously calculated and must be reduced to $3,045.  The record supports this concession; the trial court mistakenly included attorney fees and property damages in its restitution award for funeral expenses.  Maldonado also contends, and the People concede, the property damage award must be reduced to $2,000.  This concession is also supported by the record; the trial court mistakenly relied on the amount another victim (A. Garcia) had claimed for her property damages.  Rodriguez testified the value of her property damages was "probably" $2,000.  Accordingly, we shall order Rodriguez's funeral expenses award be reduced to $3,045 and property damage award be reduced to $2,000.

Maldonado asserts we should vacate the $742,424.23 award for loss of support because it is not supported by substantial evidence.  Specifically, she contends Rodriguez's uncorroborated recollection of her late husband's estimated wages was vague or inaccurate, and the trial court's method of calculation was not rational because it failed to establish Rodriguez's loss of support based on her own economic loss.  We reject these contentions.

Where a " 'decedent was a husband and father, a significant element of damages is the loss of financial benefits he was contributing to his family by way of support at the time of his death and that support reasonably expected in the future.' " (*People v. Giordano* (2007) 42 Cal.4th 644, 665, italics omitted.)  "[A] surviving spouse's economic loss is not simply the wages or income that the deceased spouse would have earned but for his or her death."

4

(*Id.* at p. 664.) "Generally, the calculation of the loss of support may be informed by such factors as the earning history of the deceased spouse, the age of the survivor and decedent, and the degree to which the decedent's income provided support to the survivor's household." (*Id.* at p. 665.)

Rodriguez testified at the hearing that her late husband earned "around 700,000" pesos each year as a gym manager, which based on the stipulated conversion rate is an annual salary of $35,000. He was 44 years old when he was killed, had been working for the company for six or seven years, and had planned to work until he reached retirement age. Although the court did not explain its method of calculation, both parties agree that it appears the court multiplied the deceased husband's estimated annual salary of $35,000 by 21.2 years, the approximate number of years until a retirement age of 65, which resulted in the award of approximately $742,000.

We disagree with Maldonado that Rodriguez's testimony regarding her late husband's estimated wages was vague or deficient because she did not submit documentary evidence to support her recollection. Although Rodriguez did not have any documentary proof of his income because it had been two years since the fatal accident, her estimate is prima facie evidence of her late husband's wages prior to his death and documentation is not required. (*Grandpierre, supra,* 66 Cal.App.5th at p. 115 [prima facie case for restitution may be based on a victim's testimony]; *People v. Goulart* (1990) 224 Cal.App.3d 71, 82–83 [the loss may be based on the victim's estimate].) The burden shifted to Maldonado to disprove Rodriguez's estimate and she failed to do so. (*Grandpierre,* at p. 115.) We reject Maldonado's further contention that Rodriguez's testimony was inaccurate because she has failed to direct us to any record evidence to support that contention.

Regarding the court's calculation method, it appears the trial court assumed that Rodriguez was entitled to receive the full amount of her late husband's lost future wages. The court could have reasonably determined that this was appropriate based on information in the probation report that he was the family's "main provider," he left behind two sons ages 14 and 17, and his sons now attend public school due to the family's "financial struggles." Maldonado could have, but did not, question Rodriguez about the extent to which her late husband's income provided support to her and the household, whether any of his income did not go toward supporting her and the household, or whether there was any basis for reducing an award for loss of support. Because the trial court was provided no factual basis for awarding Rodriguez less than the full amount of her late husband's lost future wages, we conclude it did not abuse its discretion in awarding her the full amount.

3. *Offsets from Insurance Payments*

Maldonado's insurer settled with the victims. The trial court's restitution awards to Garcia, Sanchez, and Rodriguez included their attorney fees incurred in obtaining the settlements. Maldonado asserts the trial court abused its discretion by failing to offset their restitution awards by the money they each received from her insurance policy "for the same losses," for two reasons. (Boldface and capitalization omitted.) First, she claims each restitution award as a whole should have been reduced by the total amount of insurance payment to each victim. Second, she claims that because each of the insurance payments included attorney fees, the trial court erred in also awarding restitution specifically for attorney fees. We reject both contentions.

6

If a defendant's insurance compensates a victim, the defendant is entitled to an offset for the sums paid, but only "to the extent that those payments are for items of loss included in the restitution order." (*People v. Bernal* (2002) 101 Cal.App.4th 155, 165–168 (*Bernal*).)  Restitution does not cover noneconomic losses such as pain and suffering, which are recoverable in a civil action. (Pen. Code, § 1202.4, subd. (f)(3); *People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1132 (*Vasquez*).)  Thus, if a settlement payment is attributable to noneconomic losses, there would be no grounds to offset a restitution award by that payment. (*Vasquez*, at p. 1138.)  As the party seeking an offset, Maldonado has the burden of proving she is entitled to the offset. (*Id.* at p. 1137.)

Maldonado did not meet her burden of establishing that any offset was appropriate. (*Vasquez, supra*, 190 Cal.App.4th at p. 1137.)  There is no evidence of how much of the settlements, if any, covered any specific items of loss included in the restitution order. (*Bernal*, *supra*, 101 Cal.App.4th at pp. 165–168.)  Absent any factual bases for offsetting the restitution awards by the settlement payments, we cannot conclude the trial court abused its discretion in failing to do so.  We reject Maldonado's argument that remand is necessary to allow the trial court to determine whether any portion of the settlements were allocated to economic losses covered in the restitution order.  The court had indicated that offset was appropriate as a matter of law and Maldonado had her chance but failed to meet her burden of establishing it was factually appropriate.

We next turn to Maldonado's claim that because each of the insurance payments included attorney fees, the trial court erred in also awarding restitution for attorney fees.  "Actual and reasonable" attorney fees constitute an economic loss recoverable in a restitution order. (Pen. Code, § 1202.4,

subd. (f)(3)(H).)  Attorney fees are recoverable unless a civil settlement includes payment for attorney fees.  (*People v. Grundfor* (2019) 39 Cal.App.5th 22, 28 (*Grundfor*) ["Such fees are recoverable unless they are offset in a civil settlement."].)  Additionally, attorney fees are not recoverable as restitution if they are incurred *solely* to recover noneconomic losses. (*People v. Marrero* (2021) 60 Cal.App.5th 896, 906 (*Marrero*).)  When fees cannot be reasonably divided between the pursuit of economic losses and noneconomic losses, the victim is entitled to full reimbursement for all attorney fees.  (*Id.* at p. 907.)  Again, Maldonado bears the burden of establishing that any portion of a victim's attorney fees were incurred solely to collect noneconomic losses.  (*People v. Millard* (2009) 175 Cal.App.4th 7, 33–34.)

Here, there is no evidence that any portion of the settlements were payment for attorney fees, as opposed to compensation for economic and/or noneconomic damages.  (*Grundfor*, *supra*, 39 Cal.App.5th at p. 28.)  There is also no evidence that any portion of the fees were incurred *solely* to recover noneconomic damages.  (*Marrero*, *supra*, 60 Cal.App.5th at p. 906.)  As such, the trial court did not abuse its discretion in awarding Garcia, Sanchez, and Rodriguez restitution for their attorney fees.

## DISPOSITION

The restitution order is modified, reducing Garcia's award of $398,798.44 for medical expenses to $5,002.30; reducing Rodriguez's award of $11,638 for funeral expenses to $3,045; and reducing Rodriguez's award of

$2,259.98 for personal property to $2,000.  As modified, the restitution order is affirmed.

DO, J.

WE CONCUR:


IRION, Acting P. J.


BUCHANAN, J.