Filed 8/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DREW BARRETT GRUNDFOR,<br><br>    Defendant and Appellant. | 2d Crim. No. B289580<br>(Super. Ct. No. 15F-01361)<br>(San Luis Obispo County) |

The California Constitution mandates the payment of victim restitution "in every case" resulting in economic loss, "regardless of the sentence or disposition imposed." (Cal. Const., art. I, § 28, subd. (b)(13)(B).) Courts are often called upon to impose this mandate after a defendant is convicted of driving under the influence of alcohol causing injuries, thereby compelling the injured parties to seek legal assistance to help them recover damages. The fees associated with such legal assistance are recoverable (see Pen. Code,[1] § 1202.4, subd. (f)(3)(H)), and a trial court has broad discretion when

---

[1] All further unlabeled statutory references are to the Penal Code.

determining how to calculate them. So long as the calculation rationally reflects the victim's actual and reasonable attorney fees, we will not disturb it on appeal.

Drew Barrett Grundfor appeals from the restitution order imposed after he pled no contest to driving under the influence and injuring another person (Veh. Code, § 23153, subd. (b)), and admitted allegations that he had a blood-alcohol content in excess of 0.20 percent (Veh. Code, § 23556, subd. (b)(4)), injured more than one person (Veh. Code, § 23558), and suffered a prior conviction for driving under the influence (Veh. Code, § 23560). The trial court suspended imposition of sentence and placed Grundfor on three years formal probation, including a term that he pay $178,000 in restitution to the victim for attorney fees (§ 1202.4).

Grundfor contends the restitution order was erroneous because a settlement agreement the victim signed precludes her recovery of attorney fees. He also contends that even if restitution were appropriate, the trial court erred because it refused to apportion the fees between those the victim incurred to recover economic damages and those she incurred to recover noneconomic damages, and because the court used an improper method to calculate the fee amount. We affirm.

FACTUAL AND PROCEDURAL HISTORY

N.M. stopped her car at a red light. Her husband, daughter, and daughter's friend were passengers. Grundfor rear-ended the car, injuring N.M. and the passengers. Grundfor admitted he had been drinking "way too much" alcohol. His blood-alcohol content was between 0.30 and 0.35 percent.

Prior to sentencing, he told the trial court that he had a $500,000 insurance policy that would "provide appropriate and

2

ample support for the injured parties." The probation report recommended scheduling a restitution hearing after the conclusion of a civil lawsuit to determine whether Grundfor's insurance company, Allstate, would cover N.M.'s injuries.

N.M. filed a civil lawsuit against Grundfor, which Allstate settled for $445,000.[2] Grundfor "didn't sign the settlement agreement[, and] wasn't privy to it." As part of the settlement, N.M. agreed to "waive[] any [and] all claims [she had] against [Grundfor] and Allstate." The settlement stated that it was "meant to resolve all matters between [the] parties so that neither [side would] face a claim from the other at any time in the future." It also stated that "[e]ach side [would] bear [its] own attorney[] fees and costs."

N.M. paid her attorney a $178,000 contingency fee, representing 40 percent of her recovery. She paid an additional $50,281 in litigation costs.

At the restitution hearing, N.M. requested that the trial court order Grundfor to pay her $178,000 for the attorney fees she incurred. Grundfor opposed the request. He argued N.M. received her attorney fees pursuant to the terms of the settlement agreement. Alternatively, he argued the agreement precluded her from pursuing restitution for the fees.

If the trial court did order restitution, Grundfor argued, it should apportion the fee between that used to recover N.M.'s economic damages and that used to recover her noneconomic damages. He provided a declaration from Allstate that estimated "economic damages represented less than 10 [percent] of the settlement" based on the medical costs and lost

---

[2] The remaining $55,000 of Grundfor's insurance policy was paid to his other victims.

3

wages N.M. had incurred. He also urged the court to use the lodestar method[3] to calculate any restitution award.

N.M. replied that her attorney fees were not paid by the settlement with Allstate, that Grundfor did not prove apportionment, and that the trial court was not required to use the lodestar method to calculate her fees. She provided evidence that she had already incurred $53,115 in medical bills, that her future medical expenses were projected to be more than $1.2 million, and that her loss of future earnings could exceed $1 million.

The trial court ordered Grundfor to pay $178,000 in restitution, plus interest. The court rejected Grundfor's argument that N.M.'s attorney fees were not recoverable based on the settlement agreement. It also rejected his request to apportion N.M.'s restitution award because he did not show a "principled way to make [such] an allocation": His proffered apportionment did not account for N.M.'s future medical costs and lost wages. Nor could the court make an apportionment based on the settlement because the agreement did not apportion between economic and noneconomic damages.

The trial court also found a $178,000 attorney fee award reasonable under the circumstances, and thus declined to

---

[3] The lodestar method calculates an attorney fee award "'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' [Citation.]" (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 489.)

apply the lodestar method. Basing restitution on the contingency fee was proper because N.M.'s economic damages were projected to be over $2 million. Her attorney had an "excellent" reputation, and performed significant work on the case: He coordinated N.M.'s medical care, negotiated liens, undertook and contracted multiple investigations, drafted and propounded multiple discovery requests, took depositions, filed and served pleadings, and made numerous court appearances. He also attempted to settle the case "multiple" times.

Additionally, restitution would have a "rehabilitative effect." This was not Grundfor's first conviction for driving under the influence. Allstate paid for N.M.'s other losses. Restitution was the only way Grundfor would have to personally pay for the economic damages he caused.

DISCUSSION

"[A]ll persons who suffer losses as a result of criminal activity . . . have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A).) Restitution is mandatory: It must be ordered "in every case, regardless of the sentence or disposition imposed." (Cal. Const., art. I, § 28, subd. (b)(13)(B).) Thus, whenever a victim has suffered an economic loss, the trial court must order the defendant to pay "full restitution unless it finds compelling and extraordinary reasons for not doing so." (§ 1202.4, former subd. (f).[4])

---

[4] The Legislature has amended section 1202.4, subdivision (f), deleting the phrase "unless it finds compelling and extraordinary reasons for not doing so." (Stats. 2016, ch. 37, § 3.) All further references to section 1202.4 are to the version in effect in 2014, when Grundfor committed his crime.

We review a trial court's restitution order for abuse of discretion. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) We broadly and liberally construe a victim's right to restitution, and will find no abuse of discretion so long as ""'"there is a factual and rational basis for the amount of restitution ordered."'"" (*Ibid.*) When determining whether such a basis exists, our ""'"power . . . begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the . . . court's findings."'"" (*Ibid.*)

*The restitution order*

Grundfor contends the trial court erred when it ordered him to pay restitution for N.M.'s attorney fees because she waived her claim to those fees when she signed the settlement agreement. We disagree.

The trial court properly ordered Grundfor to pay $178,000 in restitution because there was a rational, factual basis for that order: N.M. incurred those costs to settle her civil lawsuit. "Actual and reasonable" attorney fees constitute an economic loss. (§ 1202.4, subd. (f)(3)(H); see *People v. Fulton* (2003) 109 Cal.App.4th 876, 883 (*Fulton*).) Such fees are recoverable unless they are offset in a civil settlement. (*People v. Bernal* (2002) 101 Cal.App.4th 155, 165-168 (*Bernal*).) Here, they were not; the settlement required each side to bear its own attorney fees. The court was thus required to order Grundfor to pay full restitution for the fees. (§ 1202.4, subd. (f).)

That N.M. signed a release as part of the settlement is "irrelevant" to the propriety of the restitution order. (*People v. Clifton* (1985) 172 Cal.App.3d 1165, 1168; see also *Bernal*, *supra*, 101 Cal.App.4th at pp. 160-164 [defendant not relieved of restitution obligation if victim signs waiver with defendant's

6

insurance company].) While the release may have relieved Grundfor from further *civil* liability, it did not relieve him from paying *criminal* restitution. (*Bernal*, at p. 163.) "Just as a restitution order pursuant to the criminal law is not a substitute for a civil action to recover damages [citation], a partial civil settlement is not a substitute for restitution in a criminal proceeding." (*Clifton*, at p. 1168.)

N.M.'s settlement with Allstate and the state's right to compel Grundfor to pay restitution operate independently of each another. (*People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133 (*Vasquez*).) The settlement was between N.M. and Allstate. The restitution order was between Grundfor and the state. The release N.M. signed in the settlement could no more "release [Grundfor] from his financial debt to the state any more than it could terminate his prison sentence." (*Bernal, supra*, 101 Cal.App.4th at p. 162.)

The parties also had different interests. N.M. chose to accept a settlement within Grundfor's policy limits—for less than her total losses—because she did not want to risk the possibility that Grundfor would not pay. (*Vasquez, supra*, 190 Cal.App.4th at p. 1133.) But her acceptance of that amount does not mean that the prosecution also believed Grundfor had paid his debt to society. (*Ibid.*) One of the purposes of restitution is rehabilitation. (*Ibid.*) "'Restitution "is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm [their] actions have caused."'" (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1273.) "'"[T]he direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine." [Citations.]' [Citation.]" (*Ibid.*) As the trial court noted at sentencing, only

restitution would have the desired deterrent and rehabilitative effect because without it Grundfor would not have directly paid for any of N.M.'s losses.

Grundfor claims "there was no doubt it was the intent of the 'parties' . . . to resolve all restitution issues in the civil case." But the evidence on which Grundfor relies for his claim is the probation report. We glean the intent of the parties to a settlement agreement from the terms of the agreement itself. (Civ. Code, §§ 1638, 1639.) Here, the terms were that each side would bear its own attorney fees. Because the terms unambiguously show that the parties did not intend to include all of N.M.'s losses—including her attorney fees—in the settlement, they could not have intended to resolve all restitution issues in it.

Grundfor also claims he has no remedy if we do not vacate the restitution order because N.M. will file an anti-SLAPP motion[5] if he brings an action against her for breach of the settlement agreement.[6] We do not consider the merits of this claim. Grundfor has not yet served N.M. with the complaint in that action. His claim is not yet ripe. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170-171.)

Finally, we reject Grundfor's claim that the public policy in favor of encouraging civil settlements should outweigh the public policy of using restitution to rehabilitate defendants. (Compare *Fisher v. Superior Court* (1980) 103 Cal.App.3d 434,

---

[5] See Code of Civil Procedure section 425.16.

[6] On January 17, 2019, we granted Grundfor's request to take judicial notice of the civil complaint filed in *Grundfor v.* [*N.M.*] (Super. Ct. San Luis Obispo County, 2018, No. 18CV-0515).

440-441 [encouragement of civil settlements] with *People v. Moser* (1996) 50 Cal.App.4th 130, 134 [goals of restitution].) Here, both policies were furthered: N.M. settled her civil lawsuit with Allstate, and the trial court ordered Grundfor to pay N.M.'s attorney fees to aid in his rehabilitation. There were thus no conflicting policies that would constitute "compelling and extraordinary reasons" to refuse to order restitution. The trial court did not abuse its discretion when it ordered Grundfor to pay for N.M.'s attorney fees. (*Bernal*, *supra*, 101 Cal.App.4th at p. 164.)

*Apportionment of attorney fees*

Grundfor next contends the trial court erred when it declined to apportion N.M.'s attorney fee award between fees she incurred to collect economic damages and those incurred to collect noneconomic damages. There was no error.

Section 1202.4, subdivision (f), limits a victim's restitution award to "economic loss[es incurred] as a result of the defendant's conduct." Attorney fees incurred to recover noneconomic losses cannot be ordered as restitution. (*Fulton*, *supra*, 109 Cal.App.4th at pp. 882-885.) But "[t]his . . . does not mean that a victim is prohibited from recovering attorney fees if those fees are incurred to recover both economic and noneconomic losses." (*Id*. at p. 885.) "[I]t would be improper to reduce the attorney fees incurred to obtain economic damages merely because those same attorney fees also led to the recovery of nonrecoverable damages." (*Ibid*.)

A defendant bears the burden of showing that a victim has included noneconomic losses in a restitution claim. (*Millard*, *supra*, 175 Cal.App.4th at p. 33.) The trial court did not abuse its discretion when it determined that Grundfor did not

9

carry that burden here.  While Grundfor provided evidence that N.M.'s economic damages represented less than 10 percent of her settlement, N.M. provided evidence that her economic damages—future medical expenses and lost earnings—would be more than *five times* the amount of her settlement.  The court credited N.M.'s evidence over Grundfor's.  Based on that evidence, it could reasonably conclude that *all* of N.M.'s attorney fees went to the recovery of her economic damages.  Under these circumstances, the court was not required to reduce the fee award.  (*Ibid*.)

*Calculation of attorney fees*

Lastly, Grundfor contends the trial court used the wrong method to calculate N.M.'s restitution award.  We again disagree.

Restitution is "intended to make the victim whole." (*People v. Taylor* (2011) 197 Cal.App.4th 757, 763 (*Taylor*).)  The trial court has broad discretion when it sets the amount of attorney fee restitution, and "'may use any rational method'" to calculate it (*Millard, supra,* 175 Cal.App.4th at p. 26) so long as the calculation reflects the actual, reasonable fees paid (§ 1202.4, subd. (f)(3)(H)).  This includes basing the calculation on a contingency fee.  (*Millard*, at p. 33.)

Here, the contingency fee was the actual amount N.M. paid.  And based on the total economic damages she incurred, the amount of work her attorney performed, and her attorney's reputation in the community, the trial court could—and did—conclude that the amount was reasonable.

Grundfor counters that the trial court should have used the lodestar method to calculate N.M.'s attorney fees.  (See *Millard, supra,* 175 Cal.App.4th at pp. 31-33.)  But our Supreme Court has "'not mandat[ed] a blanket "lodestar only" approach'"

10

for calculating restitution.  (*Taylor*, *supra*, 197 Cal.App.4th at p. 763.)  *Any* rational calculation method is permissible.  (*Millard*, at p. 26.)  "Since a victim will likely have to pay a contingen[cy] fee in any personal injury action resulting from the crime, evidence that the victim incurred the . . . fee is prima facie evidence of a loss entitling [them] to compensation."  (*Taylor*, at p. 764.)

In *Millard*, the attorney's contingency fee translated to an hourly rate of over $1,800—a rate the trial court deemed "'unconscionable'" and "'extraordinary'" for a "'slam dunk'" case that involved little more than "'some letter writing.'"  (*Millard*, *supra*, 175 Cal.App.4th at p. 22.)  It was only after the appellate court found the fee unreasonable that it required the trial court to use the lodestar method to calculate restitution on remand.  (*Id.* at pp. 31-32.)  Here, in contrast, the contingency fee was reasonable under the circumstances.  The trial court therefore did not abuse its discretion when it used that fee as the basis for calculating N.M.'s restitution award.  (*Taylor*, *supra*, 197 Cal.App.4th at p. 764.)

## DISPOSITION

The restitution order is affirmed.
<u>CERTIFIED FOR PUBLICATION.</u>


TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

11

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

Casciola & Galambos, Guy Christophe Galambos; Tardiff Law Offices and Neil S. Tardiff, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.