Filed 5/20/22  P. v. Artykov CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>AZIZ ARTYKOV,<br><br>        Defendant and Appellant. | A159613<br><br>(Contra Costa County<br>Super. Ct. No. 51712447) |

Aziz Artykov appeals from a trial court order requiring him to pay victim restitution to AvalonBay Communities, Inc. (Avalon) pursuant to Penal Code section 1202.4.[1]  We affirm.

## BACKGROUND

Avalon owned an apartment complex in Walnut Creek and allocated a percentage of the apartments to affordable housing.  Avalon employee Matthew McVicker oversaw the affordable housing program and maintained the applicant waitlist.  In 2010, Artykov moved into an apartment at the complex.  Thereafter, Artykov began asking McVicker about the waitlist and the availability of affordable apartments.  Initially, Artykov asked McVicker

---

[1] Undesignated statutory references are to the Penal Code.  Our factual recitation is taken in part from our unpublished opinion in Artykov's appeal from his conviction.  (*People v. Artykov* (Oct. 29, 2020, A154379).)

1

to put applicants at the top of the waitlist; eventually, Artykov gave McVicker money to bypass the waitlist altogether. When an affordable apartment became available, Artykov provided McVicker with a name. That person would complete an application, get approved, and move into the apartment. Artykov gave McVicker more than $1,000 to place numerous tenants who did not qualify for below-market rent in affordable apartments. For individuals seeking affordable apartments, Artykov demanded a one-time payment of a significant sum of money, or the ability to sublet their apartment for a profit.

When Avalon discovered Artykov's scheme in 2016, it audited the affordable housing program and discovered that at least nine tenants were not eligible for below-market rent. Avalon gave these tenants a choice: they could accept market-rate apartments or move out. Four tenants who accepted market-rate apartments were subsequently evicted for nonpayment of rent. Avalon incurred $65,000 in attorney fees to evict those tenants. Shortly thereafter, several tenants who obtained affordable apartments through Artykov's criminal scheme filed complaints with the Department of Fair Employment and Housing alleging Avalon discriminated against them and denied them housing based on national origin (discrimination complaints). In an effort to perpetuate his fraudulent scheme, Artykov orchestrated the filing of the discrimination complaints and represented the tenants at a mediation with Avalon.

In 2018, the jury convicted Artykov of felony commercial bribery (§ 641.3, subds. (a), (c)). The probation report described the expenses Avalon incurred as a result of Artykov's criminal conduct. At sentencing, Avalon offered a victim impact letter estimating it incurred over $300,000 in "direct

costs" from Artykov's fraudulent scheme. The trial court placed Artykov on probation and ordered him to spend one year in custody on home detention.

Thereafter, the prosecution sought restitution for expenses incurred by Avalon that were "directly related" to Artykov's "bribery scheme." Among them were $149,486.20 in attorney fees incurred by Avalon to hire outside counsel to: (1) investigate Artykov's wrongdoing, report it to law enforcement, and cooperate with the prosecution; (2) evict tenants who improperly obtained affordable apartments through Artykov's criminal scheme; and (3) defend the discrimination complaints. The restitution request attached a letter from Avalon describing the expenses and listing the attorney fees and costs incurred.

Artykov did not file a written opposition and did not appear at the restitution hearing. At the hearing, Avalon's counsel described her role in assisting the prosecution. Counsel also asserted Avalon incurred attorney fees to evict unqualified tenants and defend the discrimination complaints and argued Avalon would not have incurred the expenses absent Artykov's criminal conduct. In response, defense counsel argued the attorney fees incurred by Avalon were unnecessary and excessive, and asserted the fees incurred to evict the tenants and defend the discrimination complaints were not "directly connected to the criminal conduct." But defense counsel did not question Avalon's counsel about the fees, nor offer evidence disputing the reasonableness of the fees.

In September 2018, the trial court ordered Artykov to pay restitution of $200,439.51, which included $149,486.20 in attorney fees. The court recited the evidence it considered, including trial testimony, the probation report, Avalon's victim impact statement, and the prosecution's restitution request

and supporting documentation. As relevant here, the court determined Avalon made a prima facie showing it incurred reasonable attorney fees as a result of Artykov's criminal conduct, and that Artykov failed to rebut that showing. The court observed that while Artykov "argued generally that some of the attorney's fees should not be attributed to [his] fraudulent scheme, he presented no evidence that any of the claimed attorney's fees were spent on non-recoverable expenses." The court also awarded restitution for "economic losses" incurred by Avalon to evict two unqualified tenants who obtained affordable apartments "due to [Artykov's] fraudulent conduct."

## DISCUSSION

California law mandates an award of victim restitution " 'in every case . . . in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary.' " (*People v. Giordano* (2007) 42 Cal.4th 644, 652.) The restitution statute — section 1202.4 — " 'allows for recovery of a broad variety of economic losses . . . incurred as a result of the defendant's criminal conduct,' " (*People v. Kelly* (2020) 59 Cal.App.5th 1172, 1179 (*Kelly*)) including "[a]ctual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." (§ 1202.4, subd. (f)(3)(H).)

" 'Restitution is "intended to make the victim whole." ' [Citation.] 'The restitution order "shall be of a dollar amount sufficient to fully reimburse the victim" for economic losses caused by the defendant's criminal conduct.' " (*People v. Marrero* (2021) 60 Cal.App.5th 896, 906.) A trial court has broad discretion in setting the amount of restitution and may use any rational method to fix the amount. (*Ibid.*) A restitution award must be affirmed so long as it is supported by a " ' "factual and rational basis." ' " (*Ibid.*) Put

4

another way, a restitution order " 'will not be reversed unless it is arbitrary or capricious.' " (*Kelly*, *supra*, 59 Cal.App.5th at p. 1181.)

Artykov challenges the restitution order on three grounds. First, Artykov contends Avalon did not make a prima facie showing the attorney fees incurred were "reasonable." This is so, Artykov argues, because Avalon did not provide detailed time records in support of the restitution request. But no such evidence was required. There " 'is no legal requirement that an attorney supply billing statements to support a claim for attorney fees.' " (*Kelly*, *supra*, 59 Cal.App.5th at pp. 1181–1183 [section 1202.4 does not " 'require any particular kind of proof' "].) Accordingly, a prima facie case for restitution may be based on the victim's testimony on, or other claim or statement of, the amount of economic loss. (*People v. Prosser* (2007) 157 Cal.App.4th 682, 690–691; *People v. Ortiz* (1997) 53 Cal.App.4th 791, 798.)

Here, Avalon made a prima facie showing it incurred attorney fees as a result of Artykov's criminal conduct. In connection with its restitution request, Avalon summarized the legal work performed by outside counsel; Avalon also listed attorney fees paid to outside counsel and the costs incurred to evict unqualified tenants. And at the restitution hearing, counsel for Avalon explained how Artykov's conduct during the eviction proceedings resulted in significant fees.[2] The trial transcript and the probation report also contained information about the attorney fees Avalon incurred. Thus,

---

[2] This case bears no resemblance to *In re K.F.* (2009) 173 Cal.App.4th 655. There, the appellate court reversed medical costs awarded as restitution because the victim offered no evidence he incurred the costs. (*Id.* at pp. 662–665.) Here, by contrast, Avalon offered evidence it paid attorney fees totaling $149,486.20.

5

the record supports the trial court's determination that these fees were reasonable.

Once Avalon made this showing, it was up to Artykov to demonstrate the amount was unreasonable. (*Kelly*, *supra*, 59 Cal.App.5th at p. 1184.) Artykov failed to submit evidence in opposition to the restitution request. Moreover, to the extent he complains that a more detailed breakdown of Avalon's attorney fee expenses should have been provided, the record discloses he neglected to request such a breakdown and he did not question counsel for Avalon as to the reasonableness of the fees. (*Id.* at p. 1185.) In sum, Artykov failed to establish the attorney fee award was unreasonable or excessive. (*People v. Grundfor* (2019) 39 Cal.App.5th 22, 30–31 [attorney fee award of $178,000 was reasonable]; *People v. Marrero*, *supra*, 60 Cal.App.5th at pp. 908–909 [affirming award of $350,000 in attorney fees].)

Second, Artykov asserts the attorney fees Avalon incurred to evict the unqualified tenants did not arise from his criminal conduct. The parties agree a trial court "may only impose restitution for economic losses incurred 'as a result of' the defendant's criminal conduct. [Citation.] Put differently, restitution may be imposed in such cases only to the extent the defendant's criminal conduct played a 'substantial factor' in causing the victim's economic loss. [Citation.] To be a substantial factor, the defendant's criminal conduct must be more than a 'trivial or remote' factor contributing to the victim's loss, but it need not be the 'sole' cause of the loss." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1101.)

That standard was met here. The tenants at issue obtained their apartments because Artykov bribed an Avalon employee. Avalon was forced to evict certain tenants because they refused — with Artykov's assistance and encouragement — to vacate their wrongfully obtained apartments. Thus, it

6

was reasonable for the trial court to conclude attorney fees incurred to evict these tenants were "proper, necessary, and a logical result of [Artykov's] criminal conduct." (*People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525; *People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1409–1410 [restitution award properly included fees and costs incurred by victim to recover embezzled funds].) The court was also within its discretion to conclude the tenants' refusal to vacate the wrongfully obtained apartments was not an independent intervening cause, as the record suggests it was foreseeable that unqualified tenants who paid Artykov to obtain their apartments through his criminal scheme would refuse to vacate those apartments. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1397.)

Third, Artykov insists the trial court erred by awarding attorney fees related to Avalon's defense of the discrimination complaints. We find the factual foundation for Artykov's argument lacking. (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1057 [rejecting argument premised on improbable reading of the record].) The prosecution made a brief reference to the discrimination complaints in its restitution request, and the parties discussed the discrimination complaints at the restitution hearing. But the documentation Avalon provided in support of the restitution request did not indicate the attorney fees incurred were for the defense of the discrimination complaints, and the court's order does not appear to award attorney fees incurred to defend those complaints. Thus, the argument is premised on a misreading of the record, and we reject it on that basis.

Having reached this conclusion, we need not address Artykov's related contention that an award of attorney fees related to the defense of the discrimination complaints "chills the exercise of statutory and constitutional rights" except to note that the argument was not raised in the trial court.

(*People v. McCullough* (2013) 56 Cal.4th 589, 593 [constitutional rights may be forfeited by failing to timely assert the right in the trial court].)

In sum, we conclude Artykov has not demonstrated the trial court abused its discretion by awarding Avalon restitution for attorney fees incurred as a result of Artykov's criminal conduct.  (*Kelly, supra,* 59 Cal.App.5th at p. 1188; *People v. Mearns* (2002) 97 Cal.App.4th 493, 502–503.)

## DISPOSITION

The September 2018 restitution order is affirmed.

 

 

 

 
_____

Rodríguez, J.

WE CONCUR:

 

 

_____

Fujisaki, Acting P. J.

 

 

_____

Petrou, J.

A159613