Filed 9/8/22 P. v. Whitmore CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>CHRISTOPHER LEE WHITMORE,<br><br>　　Defendant and Appellant. | G060528<br><br>(Super. Ct. No. 20NF0367)<br><br>O P I N I O N |

　　　　　Appeal from an order of the Superior Court of Orange County, Julian W. Bailey, Judge. Affirmed in part, reversed in part, and remanded.

　　　　　Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　Rob Bonta, Attorney General, A. Natasha Cortina, Robin Urbanski, and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

　　　　　　　　　*　　　　　*　　　　　*

A jury convicted appellant Christopher Whitmore of rape, false imprisonment, and other crimes, and the trial court sentenced him to 10 years in prison. Several months later, following a contested restitution hearing, a different judge ordered Whitmore to pay $589.35 in victim restitution.

In our previous opinion, we affirmed the judgment against Whitmore.[1] In the present opinion, we review the restitution order and conclude substantial evidence supports only a portion of the restitution award. We therefore affirm the restitution order in part, reverse it in part, and remand the matter for further proceedings.

## FACTS

Whitmore and P.S. started having sex when she was 15 years old, and they had a child together several years later. Their relationship soon grew violent. P.S. eventually broke up with Whitmore, but he continued to make repeated unwanted sexual advances toward her. (*Whitmore I, supra,* 80 Cal.App.5th at pp. 120-121, petn. for review pending.) In early 2020, Whitmore invited P.S. to go to Disneyland to celebrate their son's second birthday. P.S. accepted the invitation but rejected Whitmore's suggestion that they act as if they were still a couple. (*Id.* at p. 121.)

Whitmore drove P.S. and the child from their home in Northern California to a hotel in Anaheim. (*Whitmore I, supra,* 80 Cal.App.5th at p. 121, petn. for review pending.) That evening, Whitmore prevented P.S. from leaving the hotel room and forcibly raped, sodomized, and orally copulated her while their son lay sleeping in the other bed. The next morning, P.S. asked a hotel employee to call the police. Officers arrived on the scene and arrested Whitmore. P.S. was taken to a hospital to undergo a sexual assault examination. (*Id.* at p. 122.)

---

[1] See *People v. Whitmore* (2022) 80 Cal.App.5th 116, petn. for review pending, petn. filed Aug. 1, 2022, S275800 (*Whitmore* I).)

P.S. and her son thereafter encountered difficulties in recovering their possessions and returning to their home in Northern California. Because Whitmore was in police custody, he was unable to drive them. Additionally, the child's car seat was still in the car Whitmore had borrowed. P.S. also realized her key ring, which contained both her car keys and the keys to her apartment, was missing, and she suspected it was either in the car or in the hotel room. According to P.S., she asked the police if she could have access to Whitmore's vehicle and the hotel room, but the police refused her request.

P.S. ultimately purchased an Amtrak ticket to get home. Once back in Northern California, she arranged for a nearby car dealership to make replacement car keys, and she paid a locksmith to change the locks to her apartment.

A jury convicted Whitmore of rape, sodomy by force, forcible oral copulation, false imprisonment, and violation of a protective order. (*Whitmore I, supra,* 80 Cal.App.5th at p. 122, petn. for review pending.) The trial court sentenced Whitmore to 10 years in prison. (*Ibid.*) We affirmed that judgment. (*Id.* at p. 132.)

After the trial, the People filed a request for $589.35 in victim restitution for P.S., seeking $59.50 for the Amtrak ticket, $80 for a replacement car seat, $100 for the cost of towing her car to the dealership to replace the car key, $319.85 for the replacement car key, and $30 for changing the locks to her apartment. Various supporting documents were attached to the People's brief in support of its restitution request; the brief did not explain what those attachments were or where they came from. The attachments included (1) P.S.'s unsworn victim impact statement, which mentioned her train ride back to Northern California, (2) what appear to be cell phone screenshots of text messages that P.S. had exchanged with Whitmore's adult daughter after the rape, stating among other things that she needed the car seat back so they could return home, (3) what appears to be a cell phone screenshot showing an Amtrak ticket purchased in the amount of $59.50, and (4) what appears to be a car dealership invoice showing a charge of $319.85 for the replacement car key.

3

Separate and apart from the People's moving papers, the appellate record also contains what appears to be a printout of a webpage showing a $79 COSCO car seat; it is unclear if or when that printout was submitted to the trial court.

Whitmore opposed the restitution request, asserting that the losses claimed were not caused by his criminal conduct, and it was unreasonable to assume P.S.'s lost keys were inside the vehicle. He also argued there was no evidence P.S. incurred any cost to tow her vehicle to the dealership, noting the dealership invoice said there was no charge ("N/C") for towing. Whitmore did not present any evidence to rebut the restitution request.

Because the judge who had presided over the trial and who had sentenced Whitmore had retired, a different judge conducted the contested restitution hearing. After hearing oral argument, the trial court granted the People's request for $589.35 in victim restitution, plus 10 percent interest from the date of loss per year. The court explained it could draw reasonable inferences that the claimed losses were directly attributable to Whitmore's crimes. It also rejected the defense's argument that Whitmore should not be blamed for P.S. misplacing her keys, noting that "a rape victim might well be expected to have some cognitive deficit about what happened around that time and what she might have done with her property." Whitmore appeals that restitution order.

## DISCUSSION

Whitmore asks us to reverse the restitution order for two reasons. First, he contends there is no evidence P.S. incurred the alleged losses as a result of his criminal conduct. Second, he contends the People failed to introduce any evidence concerning the values of or amount paid for the car seat, towing the car, or the apartment lock replacement. We reject his first argument but agree with his second argument.

4

The California Constitution requires trial courts to order restitution when a crime victim suffers a loss. (Cal. Const., art. I, § 28, subd. (b)(13)(B).) Penal Code[2] section 1202.4, subdivision (f), which implements this directive, requires the court to award restitution "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f).) We liberally construe a victim's right to restitution and expansively interpret the meaning of "'economic loss.'" (*People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115.)

The amount of restitution ordered should be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] (A) Full or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (*Id*., subd. (f)(3)(A).)

"Because the statute uses the language 'including, but not limited to' these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute." (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046.) Further, "'[t]he trial court is not required to order restitution equal to the exact amount of the loss, but it must employ a rational method that makes the victim reasonably whole.'" (*People v. Petronella* (2013) 218 Cal.App.4th 945, 973.)

"The burden is on the party seeking restitution to provide an adequate factual basis for the claim." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) The standard of proof at a restitution hearing is by a preponderance of the evidence, not

---

[2] All further undesignated statutory references are to this code.

beyond a reasonable doubt. (*People v. Prosser* (2007) 157 Cal.App.4th 682, 686 (*Prosser*).)

"Section 1202.4 does not, by its terms, require any particular kind of proof." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543 (*Gemelli*).) The victim's statement about the value of the lost property constitutes prima facie evidence of its value for purposes of awarding restitution. (*Prosser, supra,* 157 Cal.App.4th at p. 690.) Otherwise, a victim who had no receipts or appraisals for stolen property might have no means of recovery. (*Id.* at p. 691.)

"Once the victim has made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*Prosser, supra,* 157 Cal.App.4th at p. 691; see *People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) To meet that burden, the defendant "may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property." (*Gemelli*, *supra*, 161 Cal.App.4th at p. 1543.)

We review a trial court's restitution order for abuse of discretion; we will find no abuse of discretion so long as there is a factual and rational basis for the amount of restitution ordered. (*People v. Grundfor* (2019) 39 Cal.App.5th 22, 27.) In evaluating whether that factual and rational basis exists, our review begins and ends with determining whether substantial evidence, contradicted or uncontradicted, supports the court's findings. (*Ibid*.)

Applying those standards here, we conclude the trial court acted well within its discretion when it ordered $379.35 in victim restitution—specifically, $59.50 for the Amtrak ticket, and $319.85 for the replacement car key. In support of the Amtrak ticket, the People presented P.S.'s victim impact statement, which mentioned her struggles to find a way home and her train ride back to Northern California; the People also submitted a cell phone screenshot showing an Amtrak ticket purchased in the amount of $59.50. In support of the charge for replacing her car key, the People presented a dealership invoice

6

showing a charge of $319.85. Additionally, P.S. testified at trial that she was unable to retrieve her keys from Whitmore's car and had to pay for replacement keys.[3]

The People therefore made a prima facie showing as to those two economic losses. In the face of that prima facie showing, the burden shifted to Whitmore to demonstrate the amount of the losses was lower. He did not carry that burden; in fact, he presented no evidence whatsoever. On this record, we are satisfied there is a factual and rational basis for those portions of the trial court's restitution order.

Whitmore contends there is no evidence that these losses were incurred as a result of his criminal conduct. We disagree. The trial court could reasonably infer that P.S. incurred those losses because Whitmore raped her, was in custody for that rape, and was unable to drive P.S. and their son back to Northern California as originally planned. In other words, but for the rape and subsequent arrest, P.S. would have been able to retrieve her car keys from Whitmore's vehicle, and she and her toddler would not have been stranded hundreds of miles from home with no way to return. Broadly construing P.S.'s right to restitution and applying the deferential abuse of discretion standard, as we must, we conclude the trial court did not abuse its discretion in awarding those portions of the restitution order.

The same cannot be said for the other portions of the restitution order. Turning first to the $80 award for the car seat, there is no evidence—documentary, testimonial, or otherwise—concerning the model or value of the car seat that P.S. was unable to retrieve from Whitmore's vehicle. As best we can tell, the only things in the record even alluding to a car seat are (1) P.S.'s testimony that she was unable to retrieve her car seat from Whitmore's car, and (2) a standalone printout of a webpage showing a

---

[3]    Although it is unclear whether the judge who issued the restitution order had access to the trial transcripts, Whitmore quoted P.S.'s testimony on these issues in his opposition to the People's restitution request, therefore putting the relevant testimony before the new judge.

$79 COSCO car seat. But as noted, it is unclear when, how, or why that printout was submitted to the trial court, and any speculation as to what that printout relates to would be just that—speculation.

Similarly, nothing in the record indicates P.S. had to pay $100 for her car to be towed to the dealership. In fact, as Whitmore's counsel pointed out to the trial court both in his opposition papers and during the restitution hearing, the invoice from the dealership for making a new car key said there was no charge ("N/C") for towing the car to the dealership.

Finally, although P.S. did testify at trial that she had to pay a locksmith to replace the locks to her apartment, there is nothing in the record before us confirming what amount P.S. paid for that work. Indeed, it appears the People randomly selected the $30 figure. While that number appears reasonable under the circumstances, there must be at least some factual basis for any restitution ordered by the court. (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) P.S.'s statement concerning what she paid would suffice.

In short, in the absence of *any* factual basis supporting these alleged losses, the trial court abused its discretion in ordering restitution of $80 for the replacement car seat, $100 for the cost of towing, and $30 for changing the apartment locks. The standard of proof at a restitution hearing is by a preponderance of the evidence, and a victim's statement concerning the value of the lost property is prima facie evidence of its value. Here, however, P.S. made no statement about the values or costs of the car seat, towing, or replacing the apartment locks; as a result, there is a total absence of evidence supporting those three components of the People's restitution request. The People's burden of providing an adequate factual basis for their claim is not high, but it requires more than simply listing alleged losses in a brief without any explanation of evidentiary support.

**DISPOSITION**

The restitution order is reversed as to the $80 award for the car seat, the $100 award for towing, and the $30 award for changing the apartment locks, and the matter is remanded to the trial court for a new hearing on those alleged losses. In all other respects, the order is affirmed. Following the new hearing, the trial court is directed to prepare an amended restitution order and amended abstract of judgment and forward a copy of the amended order and a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

GOETHALS, J.

WE CONCUR:

O'LEARY, P. J.

SANCHEZ, J.

9