Filed 4/5/23  P. v. Lopez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSE MANUEL LOPEZ,<br><br>    Defendant and Appellant. | B320125<br><br>(Los Angeles County<br>Super. Ct. No. TA156009) |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen and Pat Connolly, Judges. Affirmed.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Blake Armstrong, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Jesse Lopez pleaded no contest to driving or taking a vehicle without the owner's consent, and the trial court ordered him to pay the victim, Karl Crishon, $940 in restitution. Lopez argues the trial court abused its discretion by including in the restitution award three hours of labor by Crishon, a retired mechanic who fixed the car himself, at the hourly rate charged by a professional mechanic working at an automobile dealership. Because there was a factual and rational basis for the court's award, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Lopez Drives Crishon's Vehicle Without Consent, and Deputy Sheriffs Retrieve It*

One evening in September 2021 Crishon parked his car, a 1999 Honda compact crossover SUV, on the street in front of his house. When he woke up early the next morning, his car was gone. Crishon went to the police station and filed a report.

That afternoon Los Angeles County Sheriff's deputies saw the car, conducted a traffic stop, and identified the driver as Jesse Lopez. Lopez claimed the vehicle belonged to a friend, but Lopez suspected it was stolen. After confirming Crishon did not know Lopez or give him permission to drive his car, the deputies arrested Lopez and impounded the car. A local police department later contacted Crishon and told him to come get his car.

2

B.    *Crishon Repairs the Car Himself*

Crishon retrieved his car and discovered the ignition cylinder, floor mats, and tools for replacing a punctured tire were missing.  The glove compartment lock was also damaged.  After learning it would cost $2,090.82 to fix his car at a dealership, Crishon drove to an automobile junkyard and purchased a jack, a replacement wheel, a lock for the glove compartment, and an ignition cylinder, all for $150.[1]  Crishon spent three hours installing and replacing the parts in his car.

C.    *The Trial Court Orders Lopez To Pay Crishon $940 in Restitution*

The People charged Lopez with driving or taking a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)) and alleged Lopez had a prior serious or violent felony conviction within the meaning of the three strikes law.  (Pen. Code, §§ 667, subds. (b)-(j); 1170.12.)[2]  Lopez ultimately pleaded no contest to the charge, admitted the prior felony conviction allegation (which the court subsequently dismissed), received a prison sentence of two years, and was ordered to pay restitution in an amount to be determined at a later hearing.

At the restitution hearing in April 2022 the People presented an invoice for repairs from a Honda dealership, which listed, among other costs, an hourly rate of $185 for the mechanics to perform the repairs.  Crishon testified that the mileage on his car's odometer increased 383 miles during the

---

[1]    At the restitution hearing Crishon testified the Kelly Blue Book value of his car was $1,600.

[2]    Undesignated statutory references are to the Penal Code.

3

time the car was not in his possession, that he drove another 25 miles to the auto junkyard, and that he paid $7 for parking at the junkyard. There is no dispute about these amounts.

Crishon also testified at the restitution hearing he was a retired equipment mechanic for the City of Los Angeles, where he spent 26 years "working on cars and trucks." He stated he retired in 2016 "at $85 hourly rate with the City," which was what he said the City "charged for [his] labor doing repairs." The People asked the court to award restitution for the labor costs at the hourly rate of $185. Counsel for Lopez argued the court should not award any amount for the time Crishon spent fixing his car. Counsel argued the court should not use an hourly rate of $185 because "there were no outlays of expenditure with regard to his time" and the "$185 rate was never paid to anyone." Counsel also argued the court should not use an hourly rate of $85 because Crishon "was not making that" and, as a retired mechanic, Crishon did not "lose anything with regard to his time" by fixing his car.

The trial court judge awarded Crishon a total of $940 in restitution, which included $555 (3 x $185) for Crishon's time. Lopez timely appealed.[3]

## DISCUSSION

Lopez does not dispute he is responsible for the $385 in non-labor costs court awarded in restitution: $150 for the replacement parts Crishon purchased to fix his car, $228 for

---

[3]     An order requiring the defendant to pay restitution is appealable. (*People v. Ford* (2015) 61 Cal.4th 282, 286; *Gray v. Superior Court* (2016) 247 Cal.App.4th 1159, 1164.)

4

mileage (based on the 2021 Internal Revenue Service mileage reimbursement rate) for the 383 miles Lopez drove in Crishon's car and the 25 miles Crishon drove to obtain the car parts, and $7 for parking at the junkyard. Lopez does dispute the $555 the court awarded at $185 per hour for the labor cost of replacing those parts. Awarding restitution based on the hourly rate of $185, however, was not an abuse of discretion.

### A.     *Standard of Review*

The California Constitution ensures all persons "who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13); see *People v. Martinez* (2017) 2 Cal.5th 1093, 1100.) Section 1202.4, subdivision (a)(1), states it is "'the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime.'" (See *People v. Runyan* (2012) 54 Cal.4th 849, 856.)

Section 1202.4, subdivision (f)(3), provides that, "'[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct.'" (See *People v. Giordano* (2007) 42 Cal.4th 644, 668-669.) Such economic loss includes "[f]ull or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4 subd. (f)(3)(A); see *People v. Stanley* (2012) 54 Cal.4th 734, 737; see also *People v. Ung* (2023)

88 Cal.App.5th 997, 927 [in addition to "restitution in the form of returning stolen property," courts have required "that defendants pay additional amounts to compensate victims for losses in the value of the returned property"].)  Where, as here, the owner of the damaged property does the repairs, "rather than hire someone else to do them," the owner's "time [has] value" and is properly included in a restitution award.  (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1544.)  A restitution order, however, is """"not . . . intended to provide the victim with a windfall."""  (*People v. Nichols* (2017) 8 Cal.App.5th 330, 342; see *People v. Millard* (2009) 175 Cal.App.4th 7, 28.)

We review a restitution order for abuse of discretion. (*People v. Chhoun* (2021) 11 Cal.5th 1, 56; *People v. Ung*, *supra*, 88 Cal.App.5th at p. 927; *People v. Czirban* (2022) 77 Cal.App.5th 1050, 1063.)  "We broadly and liberally construe a victim's right to restitution, and will find no abuse of discretion so long as there is a factual and rational basis for the amount of restitution ordered.  [Citation.]  When determining whether such as basis exists, our power . . . begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the court's findings." (*People v. Grundfor* (2019) 39 Cal.App.5th 22, 27, internal quotation marks omitted.)  The trial court acts within its broad discretion in determining the amount of restitution so long as the court employs "a method that is rationally designed to determine the . . . victim's economic loss." (*People v. Giordano*, *supra*, 42 Cal.4th at pp. 663-664; accord, *People v. Baudoin* (2022) 85 Cal.App.5th 1184, 1191; see *Ung*, at pp. 928-929 ["'[A]ll that is required is that the trial court "use a rational method that could reasonably be said to make the victim whole, and may not make

an order which is arbitrary or capricious.""]; *People v. Shelly* (2022) 81 Cal.App.5th 181, 199 [a restitution order "'will not be reversed unless it is arbitrary or capricious'"].)

B.     *The Trial Court Did Not Abuse Its Discretion in Calculating the Labor Cost of Repairing Crishon's Car at the Hourly Rate of $185*

Lopez argues the trial court abused its discretion in compensating Crishon for the three hours he spent fixing his car at the hourly rate of $185 because it is not "rational to pay the victim for his own labor at the rate that would have been charged him if he had obtained the repairs at the auto dealership." Although Lopez argued at the restitution hearing and suggests in his opening brief the trial court should have awarded $0 in labor costs because Crishon did not "forgo earned income that he would otherwise have made had he not devoted the three hours to this work," Lopez also argues that the trial court should have compensated Crishon "at a rate reasonable for his time not the time of someone else" and that treating "him the same as a professional would be like figuring the time a layman might take to clean and dress a skinned knuckle at home at the rate of a doctor." In his reply brief Lopez asserts the trial court should have used an hourly rate of $85, rather than $185. Putting aside that Crishon was not a layman but a (retired) mechanic, the trial court did not abuse its discretion in calculating restitution using the hourly rate of $185.

The People introduced without objection an invoice from a Honda dealership indicating the dealership charged $185 an hour for the time mechanics spent making repairs (a rate Lopez does not argue was unreasonable for Honda mechanics), and Crishon

7

testified he spent three hours repairing his car. This evidence constituted a prima facie showing of an element of Crishon's economic loss, which shifted the burden to Lopez to disprove that amount. (See *People v. Shelly*, *supra*, 81 Cal.App.5th at p. 199 ["'Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of the losses claimed by the victim.'"]; *People v. Aguilar* (2016) 4 Cal.App.5th 857, 862 ["'At [a victim restitution] hearing, the prosecution bears the initial burden of making a prima facie showing of the victim's economic loss. Once that showing is made, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.'"].)

Lopez argues the trial court should have awarded restitution for Crishon's repair work at the hourly rate of $85 because that was his last wage rate paid by the city as a mechanic before he retired. The trial court could have used $85 as an hourly rate for Crishon. But using $185 was not irrational or illogical. There was no evidence suggesting an hourly rate of $185 for a mechanic was excessive or unreasonable. The trial court rationally and reasonably could have concluded that an hourly rate of $85 was too low or did not reflect the true labor cost of repair because Crishon's wage while he was working for the city was six years old, artificially low because Crishon had not worked in the private sector, did not include retirement or other benefits,[4] or reflected a different kind of work. And while,

---

[4] Counsel for Lopez asked Crishon if he was receiving a pension from the City, but the court sustained the prosecutor's relevance objection. Counsel for Lopez stated he wanted to use

as Lopez argues, the evidence supported using an hourly rate of $85 rather than $185, the trial court's decision to use $185 was not irrational. (See *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295 ["'[i]f the circumstances reasonably justify the [trier of fact's] findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding'"]; *People v. Garcia* (2020) 46 Cal.App.5th 123, 144 [same].) The trial court did not abuse its discretion in awarding $940 in restitution. (See *People v. Stanley*, *supra*, 54 Cal.4th at p. 737 [a victim restitution order should be "'broadly and liberally construed'"]; *People v. Frias* (2021) 69 Cal.App.5th 1121, 1123 ["courts broadly and liberally construe [restitution] provisions in victims' favor"]; *People v. Selivanov* (2016) 5 Cal.App.5th 726, 780 ["'"'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.'"'"].)

---

Crishon's pension income to calculate Crishon's current hourly rate.

## DISPOSITION

The order is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.