Filed 12/23/25  P. v. Adams CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064635 |
| v. | (Super. Ct. No. 18ZF0007) |
| DAVID BRENT ADAMS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Craig E. Robison, Judge. Affirmed. Request for judicial notice. Granted.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Respondent.

\*          \*          \*

Defendant David Brent Adams appeals from a postjudgment order awarding $907,200.09 in restitution to his victims, Gary and Pamela Ziebarth (Adams's uncle and aunt). Adams's appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), setting forth the facts of the case and requesting that we review the entire record. Counsel also identified four specific issues to assist the court in its review. We issued an order inviting Adams to personally file a supplemental brief, which he did not do. We have examined the entire record and considered the issues suggested by counsel. Finding no arguable issue, we affirm the restitution order.

FACTS AND PROCEDURAL HISTORY[1]

In 2007, the victims, Gary and Pamela Ziebarth (the Ziebarths), co-signed a $600,000 line of credit for Adams and his wife to improve a residential property in Costa Mesa. Adams failed to repay the loan. To protect their credit, the victims paid off the entire $600,000 debt in 2008 and subsequently sued Adams civilly. The Ziebarths ultimately prevailed in their civil suit.

While the civil litigation was pending, Adams engaged in a scheme to create the appearance that he had no equity in the Costa Mesa property, thereby preventing the victims from collecting on any future judgment. On December 20, 2013, Adams created a Wyoming limited liability company named "Chase One, LLC." That same day, he recorded a fraudulent deed of trust against the property in favor of Chase One, LLC, purporting to secure a debt of $228,000. No such debt existed; Adams controlled the entity. Later that same day, Adams's wife filed for bankruptcy.

---

[1] The defendant's request for judicial notice is granted.

2

When the victims attempted to enforce their rights through the bankruptcy proceeding, Adams engaged in perjury to conceal his scheme. In February 2016, Adams testified in a deposition that Chase One, LLC was a legitimate lender, that he had received the deed of trust in the mail, and that he had no affiliation with the entity. He later filed a declaration repeating these falsehoods and submitted a falsified declaration from a fictitious individual named "Jack Cawood" to corroborate his story. Adams subsequently transferred the title of the property to another shell entity, "Enclave Assets LLC," to further frustrate collection efforts.

In 2015, after the superior court in the civil action entered judgment in favor of the Ziebarths, and during the pendency of the bankruptcy proceeding, the Ziebarths purchased the bankruptcy estate's community property interest in the residence from the bankruptcy trustee for $10,000. This was done to protect their ability to collect on the judgment against the property.

In 2018, the Orange County Grand Jury indicted Adams on charges of conspiracy, recording a false instrument, four counts of perjury, and falsifying documents. Following a mistrial in early 2023, and during the pendency of a second trial, Adams pleaded guilty to: one count of recording a false instrument (Pen. Code, § 115, subd. (a))[2]; four counts of perjury (§ 118, subd. (a)); and one count of falsifying documents (§ 134).

The trial court suspended imposition of sentence and placed Adams on two years of formal probation, with various terms including 365 days in county jail. The court reserved jurisdiction to determine the amount of victim restitution.

---

[2] All further statutory references are to the Penal Code.

The victims submitted a restitution claim totaling $907,200.09, comprised of: (1) the original $600,000 debt paid by the victims; (2) $10,000 the victims paid to a bankruptcy trustee to secure community property interests in the residence; and (3) $297,200.09 in attorney fees and costs incurred during years of civil and bankruptcy litigation to unearth Adams's fraud and set aside the fraudulent transfers.

Following a contested restitution hearing on July 8, 2024, the trial court granted the victims' request in full. The court ordered restitution in the amount of $907,200.09, plus 10 percent interest per annum calculated from the specific dates of loss for each component of the award. Adams filed a timely notice of appeal challenging the restitution order.

## DISCUSSION

Appellate counsel suggests we consider four potential issues. We have reviewed the record and the relevant legal authorities for each and conclude none presents an arguable basis for reversal.

## I.

### THE $600,000 DEBT AND THE CIVIL JUDGMENT

Counsel asks whether the trial court abused its discretion by ordering $600,000 in restitution when that amount is duplicative of a civil judgment for breach of contract awarded to the victims in 2015. It did not.

"An order of restitution pursuant to section 1202.4 does not preclude the crime victim from pursing a separate civil action based on the same facts from which the criminal conviction arose. [Citations.] 'While a restitution order is enforceable "as if [it] were a civil judgment" [citation], it is *not* a civil judgment. A restitution order does not resolve civil liability.' [Citation.] Moreover, a restitution order reimburses the crime victim only for economic losses, not noneconomic losses such as pain and suffering, which are

4

recoverable in a civil action." [Citations.] [¶]Just as a restitution order does not fully replicate a civil judgment, so too the judgment obtained in a civil action does not completely satisfy the purpose of an order of restitution entered in a criminal case. In addition to compensating the victim, a restitution order is intended to rehabilitate the defendant and to deter the defendant and others from future crimes." (*People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1132–1133.)

## II.

### ATTORNEY FEES FOR CIVIL LITIGATION

Counsel asks whether the court abused its discretion by awarding legal fees associated with eight years of litigation to protect the victims' interests in bankruptcy proceedings and unravel Adams's fraudulent scheme. It did not.

We review a trial court's restitution order for abuse of discretion. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).)

Victims are entitled to recover reasonable attorney fees and costs incurred as a result of the defendant's criminal conduct. (§ 1202.4, subd. (f)(3)(H).) This includes fees incurred in civil or bankruptcy proceedings to preserve assets against a defendant's attempt to dissipate or conceal them. (*People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525–1526 [fees incurred to prevent dissipation of assets in civil proceedings are recoverable]; *People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1409–1410 [fees incurred in civil action to uncover the extent of embezzlement are recoverable].)

The court's award of attorney fees did not include any fees from the civil action, and instead only included the fees incurred to investigate and unravel Adams's fraudulent scheme. These costs were the direct result of

Adams's criminal attempts to hide his equity in the property. Consequently, the award of these fees was within the court's discretion.

## III.

### CALCULATION OF ATTORNEY FEES (LODESTAR METHOD)

Next, counsel asks whether the court was required to apply the "lodestar" method (hours expended multiplied by reasonable hourly rate) to calculate the attorney fee award. We conclude it was not.

While the lodestar method is the standard for statutory fee-shifting in civil cases, we are aware of only one published decision to require that method in a criminal restitution context. *Millard, supra*, 175 Cal.App.4th 7 held that a trial court erred by failing to apply the lodestar method where a crime victim attempted to recover a *contingency* fee paid to an attorney. We are not aware of any case to follow *Millard* in that holding, and multiple published decisions have disagreed with it. (See *People v. Grundfor* (2019) 39 Cal.App.5th 22, 30–31; *People v. Taylor* (2011) 197 Cal.App.4th 757, 761–764; *People v. Marrero* (2021) 60 Cal.App.5th 896, 910, fn. 1.) Those decisions have noted that the lodestar method has never been considered the exclusive method for calculating fees in all contexts (*People v. Taylor*, *supra*, 197 Cal.App.4th at pp. 762–763), and that the calculation of fees in a civil context often includes considerations not pertinent to a criminal restitution hearing (*id.* at p. 763). Rather, in a criminal restitution hearing a court may use any rational method to calculate fees, "so long as the calculation reflects the actual, reasonable fees paid [citation]." (*People v. Grundfor*, *supra*, 39 Cal.App.5th at p. 30.)

Here, the victims' attorney submitted a detailed declaration and billing records categorizing the services rendered over several years. This constituted a prima facie showing of the loss. Adams offered no evidence to challenge the reasonableness of the rates or hours. The trial court was not required to perform a formal lodestar calculation on the record, provided the award was factual and rational. We find no abuse of discretion.

IV.

THE $10,000 BANKRUPTCY PAYMENT

Finally, counsel asks whether the court abused its discretion by ordering reimbursement of $10,000 the victims paid to the bankruptcy trustee to secure a community property interest in the residence. It did not.

A restitution order must "fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).)

The purchase of Adams's wife's community property interest from the bankruptcy trustee was a direct consequence of Adams's scheme. Because Adams's fraudulent scheme encumbered what may have been a community asset, the Ziebarths purchased that interest at a heavy discount in order to preserve their ability to collect on the asset at a later time. It was reasonable for the trial court to conclude that but for Adams's fraudulent maneuvering, this expense would not have been incurred.

## DISPOSITION

The postjudgment order is affirmed.


                                              SANCHEZ, ACTING P. J.


WE CONCUR:


SCOTT, J.


BANCROFT, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.